164 N.J. Super. 281 (1978)
395 A.2d 1300
CITY OF PHILADELPHIA, PLAINTIFF,
v.
HENRY H. STADLER, DEFENDANT.
CITY OF PHILADELPHIA, PLAINTIFF,
v.
SALVATORE DIMARTINO, DEFENDANT.
CITY OF PHILADELPHIA, PLAINTIFF,
v.
JOSEPH A. SULPIZIE, DEFENDANT.
CITY OF PHILADELPHIA, PLAINTIFF,
v.
JAMES SPROULES, DEFENDANT.
Superior Court of New Jersey, District Court, Burlington County.
December 11, 1978.
*284 Mr. Charles Crabbe Thomas, attorney for plaintiffs.
Mr. William S. Ruggierio, attorney for defendants.
WELLS, J.S.C.
These four cases consolidated for hearing and decision are before the court on plaintiff's motion for summary judgment. Plaintiff City of Philadelphia (city) seeks New Jersey judgments based upon judgments against each defendant entered in the Court of Common Pleas, Trial Division, of the County of Philadelphia, State of Pennsylvania, pursuant to the Full Faith and Credit Clause, U.S. Const., Art. IV, § 1. Defendants resist, asserting various constitutional defenses. The undisputed facts are:
Since 1939 the city has levied a tax upon wages earned by persons working within the County of Philadelphia, Philadelphia *285 Pa. Code, § 19-1500 (1973). This tax, known as the wage and net profit tax (hereinafter wage tax), is a self-assessed tax which places the responsibility of filing a return upon the taxpayer. In these actions defendant taxpayers are residents of the State of New Jersey who are employed by the Federal Government on federal enclaves inside the boundaries of Philadelphia.[1] The defendants refused to file the necessary forms or pay the assessed taxes.
In each case suits alleging the resultant tax deficiency against each defendant were filed in the Court of Common Pleas of Philadelphia County and served upon defendants under the Pennsylvania Long-Arm Statute, 42 Pa. C.S.A. § 8301 et seq., by serving the Secretary of the Commonwealth and defendants at their last known address by certified mail, return receipt. The records of the Pennsylvania proceedings before this court show that all the addresses were to communities within Burlington County and that in three cases the certified mail went unclaimed and that one was refused. After defendants failed to answer, appear or otherwise defend, the city moved to enter judgments by default for failure to plead. Notices pursuant to Pennsylvania R.C.P. 2082 were sent to each defendant by certified mail, return receipt requested notifying them that default judgments would be entered within 20 days of the mailing of the notice. Once again defendants either refused delivery of the letter or it went unclaimed. Following expiration of the 20-day period without response from defendants, judgments were entered in favor of the city. These New Jersey actions on the aforesaid Pennsylvania judgments followed.
Defendants argue on various grounds that the judgments entered by the courts of the Commonwealth of Pennsylvania are not entitled to full faith and credit. U.S. Const., Art. IV, § 1. Generally, the Full Faith and Credit *286 Clause requires every state to give at least the res judicata effect which the judgment would be accorded in the state which rendered it. Duke v. Durfee, 375 U.S. 106, 109, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). However, it is a well established constitutional principle that a judgment entered without due process of law is not entitled to full faith and credit and may not be enforced even as a matter of comity. Griffin v. Griffin, 327 U.S. 220, 228-229, 66 S.Ct. 556, 90 L.Ed. 635 (1946); See also, Restatement, Conflicts 2d, § 104 at 315 (1969). Thus, a court of this State, when asked to enforce a foreign state judgment, must deny full faith and credit if the rendering court lacked in personam jurisdiction, Duke v. Durfee, supra, 375 U.S. at 106, 84 S.Ct. 242, 11 L.Ed.2d 186; subject matter jurisdiction, James v. Francesco, 61 N.J. 480, 485 (1972); Klaiber v. Frank, 9 N.J. 1 (1952), or failed to provide adequate notice and an opportunity to be heard. National Exchange Bank v. Wiley, 195 U.S. 257, 25 S.Ct. 70, 49 L.Ed. 184 (1904); Griffin v. Griffin, supra. Defendants assert that the judgments recorded in the Commonweath courts were entered without due process. U.S. Const. Amend XIV. The primary issues may be summarized as follows:
1. Did lack of notice to defendants of their rights to administrative review prior to the filing of the suits in Pennsylvania, combined with the probable application in Pennsylvania of its doctrine of exhaustion of remedies, deprive defendants of an effective right to be heard within the Commonwealth of Pennsylvania?
2. Did the application of Rule 306, PA. R.C.P. (Philadelphia County), amended May 17, 1976, also cited as Rule 40-H(1) and (2), Philadelphia Civil Rules, operate to deny defendants the effective opportunity to appear and defend in the Pennsylvania courts?
3. Did defendants have sufficient minimal contacts in Pennsylvania for its courts to render in personam judgments against them grounded upon service outside Pennsylvania under the Pennsylvania Long Arm Statute?
4. Does New Jersey public policy preclude the entry of judgments in these cases?
*287 Addressing the first issue, defendants argue that the default judgments were entered in violation of their due process rights since they never received notice in the form of tax bills or assessment notices of their right to appeal to the Philadelphia Tax Review Board, an administrative agency in which all taxpayers must "exhaust any remedy" prior to either prosecuting or defending any action in court relative to the tax.[2] See Philadelphia v. Kenny, 28 Pa. Cmwlth. 531, 369 A.2d 1343 (Cmwlth. Ct. 1977), cert. den. 434 U.S. 1025, 98 S.Ct. 754, 54 L.Ed.2d 774 (1977).
The court is not satisfied that defendants have the right to complain that they did not receive such notice. The complaints filed in the actions before the Pennsylvania courts specifically alleged that such notices had been given.[3] Thus each of the defendants, had they chosen to receive the complaints served on them, would have been apprised that the city took the position that a notice of the right to an administrative remedy had been given. Defendants could then, in the *288 Pennsylvania actions, have specifically denied that such notice had been sent and put the city to its proofs on the issue of notice of the availability of administrative review. Such notice is important to defendants since they argue that the doctrine of exhaustion of remedies, as applied in Pennsylvania, would have precluded them from a right to be heard on the merits within the Commonwealth of Pennsylvania, and cite the case of Philadelphia v. Kenny, supra. However, that case is clearly distinguishable. Although in Kenny the court did apply the doctrine of exhaustion of remedies, the issue of the mailing of the notice of administrative review was not disputed. No case shown to this court indicates that Pennsylvania would apply the doctrine of exhaustion of remedies if it found, in fact, that defendants' had not received notice of the administrative remedy they were obliged to pursue.
Defendants next argue that Rule 306, Pa. R.C.P. (Phila. Cty.), amended May 17, 1976, also cited as Rule 40-H(1) and (2), Philadelphia Civil Rules precluded the defendants in these actions from appearing in the courts of the Commonwealth. The rule, before its amendment, provided as follows:
The first paper filed by a party in a case shall have endorsed thereon an address in the Commonwealth at which all papers and notices thereafter may be served upon him, and the Prothonotary shall not accept filing unless it contains such endorsement.
Defendants contend this rule precludes pro se nonresident defendants from appearing in the Philadelphia Commonwealth Courts. This court disagrees with that interpretation. The rule on its face only requires that a party to a lawsuit list an address within the Commonwealth. It does not exclude a nonresident litigant from making his appearance. In these matters defendants could have provided a mailing address within the city since they worked on installations clearly within its boundaries. No authority has been presented to this court which holds that the Pennsylvania *289 courts deny access to the court for failure to comply with the above-cited rule. Nor did defendants make any effort whatsoever to appear. Therefore, no shred of evidence supports the theory that this rule is violative of the Fourteenth Amendment.
The last due process argument utilized by defendants to resist enforcement of the Pennsylvania judgments is that they lacked sufficient minimal contacts with Pennsylvania to satisfy due process under the test announced in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In the Pennsylvania proceedings, service pursuant to the long arm statute, 42 Pa. C.S.A. § 8301 et seq., was invoked on the theory that § 8304 thereof permits service in the manner described on nonresidents who "shall have done any business" in Pennsylvania. For purposes of this statute, working in Philadelphia is "doing business" there under the definition of that phrase given in 42 Pa. C.S.A. § 8309. Philadelphia v. Bullion, 28 Pa. Cmwlth. 485, 368 A.2d 1375 (Cmwlth. Ct. 1977). This court is bound by that interpretation for "where the construction of a foreign statute is involved, our courts will accept as controlling the interpretation placed thereon by the courts of that state." King v. Klemp, 26 N.J. Misc. 140, 145, 57 A.2d 530, 533 (Ch. 1947); Watson v. Lane, 52 N.J.L. 550 (E. & A. 1890); 73 Am.Jur.2d, Statutes, § 143 (1974).
In Bullion facts identical to those in the present case were involved except: (1) defendant conceded employment in Philadelphia and (2) appeared in Pennsylvania to contest service under the long arm statute. He lost. Consequently, the only avenue of inquiry open to the court is whether merely working in Pennsylvania satisfies the constitutional requirement of minimal contacts to give it long arm jurisdiction over New Jersey residents consistent with due process. International Shoe, supra, McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The central concern of the inquiry *290 into personal jurisdiction has become the relationships among defendant, the forum and the litigation rather than the mutually exclusive sovereignty of the states on which the rules of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), were based. Shaffer v. Heitner, 433 U.S. 186, 188, 97 S.Ct. 2569, 2571, 53 L.Ed.2d 683, 685 (1977). Even before Shaffer, our own Supreme Court answered the question posed above. In J.W. Sparks and Co. v. Gallos, 47 N.J. 295 (1966), defendant, a New Jersey resident, purchased stock via telephone through a New York broker with an office in New Jersey and the court held defendant had "purposefully avail[ed] [him]self of the privilege of conducting activities within the forum state" and thus it could be said that he invoked "the benefits and protections of its laws." The court then reversed a county district court holding disallowing a New Jersey judgment based upon a New York default judgment secured after service in New Jersey under New York's long arm statute. If a single stock purchase, where defendant buyer never went to New York but merely used a New York agent, is sufficient "minimal contact," clearly years of continuous employment in Philadelphia with all its attendant use of streets, police services and other amenities is clearly contact with Pennsylvania sufficient to satisfy traditional concepts of fair play in requiring these defendants to respond to actions arising out of such employment in Pennsylvania. McGee, supra; Hanson, supra; J.W. Sparks, supra; Avdel Corp. v. McCure, 58 N.J. 264 (1971).
Defendant next argues that the public policy of New Jersey forbids enforcement of the Pennsylvania judgment. Although full faith and credit may on rare occasions give way to the policy of enforcing state, Restatement, Conflicts 2d, § 103 (1969), such an exception has an extremely narrow application. In fact, it has been said that there are no exceptions in the case of a money judgment rendered in a civil action by the courts of another state. Zelek v. Brosseaus, 47 N.J. Super. 521, 533 (App. Div. 1957), aff'd 26 N.J. *291 501 (1958). See also, Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), reh. den. 321 U.S. 801, 64 S.Ct. 483, 88 L.Ed. 1088 (1944). In Milwaukee Cty. v. M.E. White Co., 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220 (1935), Mr. Justice Stone succinctly summarized the full faith and credit clause and its function in a federalist system:
The very purpose of the full faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of its origin. [at 276-277, 56 S.Ct. at 234]
It is the contention of defendants that the public policy of the State of New Jersey is so undividedly opposed to the imposition of the wage tax that the courts of New Jersey should not enforce a judgment for its collection. Such policy, defendants argue, is manifested in two Assembly bills, Assembly Concurr. Resolu. 118 (February 15, 1974) and Assembly Resolu. 16 (May 17, 1974), and the Attorney General's appearance amicus curiae in Non-Resident Taxpayers Ass'n v. Munic. of Philadelphia, 341 F. Supp. 1135 (D.N.J. 1872), aff'd 478 F. 2d 456 (3 Cir.1973). Admittedly, these materials reveal an earnest dislike for the imposition of the wage tax upon all New Jersey residents working within the city, but to base a denial of full faith and credit on such an expression would be to revive the status of the several states as "independent foreign sovereignties, each free to ignore obligations * * * of the others." Milwaukee Cty., supra, 296 U.S. at 276, 56 S.Ct. at 234.
New Jersey recognizes tax actions of foreign states, N.J.S.A. 54:8A-46(b), in its courts. More importantly, Restatement, Conflicts 2d § 117 (1971), provides:
A valid judgment rendered in one state of the United States will be recognized and enforced in a sister state even though the *292 strong public policy of the latter state would have precluded recovery in its courts on the original claim.
In Buckley v. Huston, 60 N.J. 472 (1972), the court ruled that a common law right existed in favor of a foreign municipality to sue in the courts of New Jersey to collect the very tax here at issue. Although in a different procedural posture, this reader fails to discern in that opinion any expression of policy which would prevent enforcement of a foreign judgment. If the policy of New Jersey permits the filing of original suits in its courts for the collection of the tax, it seems highly unlikely, and this court refuses to so hold, that this same policy would cause a court of New Jersey to deny full faith and credit to a sister state's judgment.
In a like vein, defendants argue that the assessment of a penalty and interest for failing to timely satisfy the tax obligation is a penal law not entitled to full faith and credit. Again reliance is placed on Buckley v. Huston, supra, where our Supreme Court chose not to eliminate the prevailing doctrine that foreign penalties as such are not recoverable in an original suit for the collection of taxes. 60 N.J. at 482. See also, Restatement, Conflicts 2d § 129 (1969). This court fails to find in the record that the nominal penalty arose under a penal law or is of such a nature as to preclude suit to recover it outside of the Commonwealth. Milwaukee Cty. v. M.E. White Co., 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220 (1935).
Lastly, defendants ask this court to declare that the 35-year-old holding of Kiker v. Philadelphia, 346 Pa. 624, 31 A.2d 289 (Sup. Ct. 1943), cert. den. 320 U.S. 741, 64 S.Ct. 41, 88 L.Ed. 439 (1943), is erroneous. Kiker upheld the power of the City of Philadelphia to levy and collect the wage tax on income earned by nonresidents employed on federal areas within city boundaries. This result has been followed ever since. Lang v. Philadelphia, 31 Pa. Cmwlth. 537, 377 A.2d 849 (Cmwlth. Ct. 1977), app. dism. ___ U.S. *293 ___, 99 S.Ct. 59, 58 L.Ed.2d 96 (1978); Philadelphia v. Kenny, supra; Philadelphia v. Konacki, 27 Pa. Cmwlth. 391, 336 A.2d 608 (Cmwlth. Ct. 1976); Application of Thompson, 157 F. Supp. 93 (E.D. Pa. 1957) aff'd sub nom. U.S. ex rel. Thompson v. Lennox, 258 F.2d 320 (3 Cir.1958), cert. den. 358 U.S. 931, 79 S.Ct. 317, 3 L.Ed.2d 303 (1959). Moreover, this court finds it lacks the jurisdiction to inquire into the power of Philadelphia to levy this tax, in an action on valid Pennsylvania judgments.
In People of State of New York v. Coe, 112 N.J.L. 536 (1934), the New Jersey Court of Errors and Appeals ruled that a New York judgment for taxes was entitled to full faith and credit. In so doing the court pointed out that questions of the construction and application of the New York tax laws were not the subject of litigation in New Jersey since they had been conclusively determined by the New York judgment which established the liability for the tax. Id. at 538. Likewise, in another proceeding to recover a tax in a foreign court, it was said:
In a suit upon a money judgment for a civil cause of action, the validity of the claim upon which it [is] founded is not open to inquiry, whatever its genesis. Regardless of the nature of the right which gave rise to it, the judgment is an obligation to pay money in the nature of a debt upon a specialty. [Milwaukee Cty., supra, 296 U.S. at 275, 56 S.Ct. at 233]
Consequently, this court concludes that it lacks the capacity in a full faith and credit enforcement proceeding to attach a different interpretation to the wage tax.
Having reviewed defendants' contentions and there existing no genuine issue of material fact, plaintiff's motion for summary judgment is granted, R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-75 (1954), in the cases of Philadelphia v. Stadler; Philadelphia v. DiMartino and Philadelphia v. Sulpizie.
In the case of Philadelphia v. Sproules, also consolidated for disposition on motion, it appears that Sproules actually *294 appeared and defended in the Philadelphia Court of Common Pleas. No issue was raised as to his nonreceipt of a notice of administrative remedy and Sproules, like Bullion, lost on the merits. As to him, on this motion, counsel raises only the public policy arguments in defense of the application for summary judgment. For the same reasons as given supra, that argument is rejected and summary judgment is allowed in favor of the city.
NOTES
[1] The United States, unlike other employers, pursuant to 5 U.S.C.A. § 5520 does not withhold the taxes from certain of its employees' wages.
[2] This argument is quite different than that first asserted at argument on the motion. Then defendants virtually conceded receipt of delinquent tax bills on the back of which was printed a statement of appeal rights to the Philadelphia Board of Tax Review, and contended that such notice was not statutorily authorized and hence invalid as notice. Compare Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928), with Juzek v. Hackensack Water Co., 48 N.J. 302 (1966), and Jersey City v. Div. of Tax Appeals, 5 N.J. Super. 375 (App. Div. 1949), aff'd 5 N.J. 433 (1950). The court need not now reach that argument since defendants have shifted their factual position to one of denial that they received the tax bills. They also seek to take depositions on the issue. In view of the determination herein, depositions are unnecessary and such leave is denied.
[3] Paragraph (6) states:

Based on information supplied by the Federal Agency to the Department of Collections of the City of Philadelphia, assessments were made and the Defendant was duly notified of such assessments from which the Defendant failed to file a Petition for Review with the Philadelphia Tax Review Board as permitted under Section 19-1702 of The Philadelphia Code.