CITY OF PHILADELPHIA, PLAINTIFF-APPELLANT, v. RALPH E. BAUER, DEFENDANT-RESPONDENT.

Argued April 30, 1984—Decided August 2, 1984.

*Nicholas Panarella,* Jr., argued the cause for appellant.

*James E. Rafferty* argued the cause for respondent.

The opinion of the Court was delivered by

GARIBALDI, J.

This case is yet another chapter in the continuing saga of New Jersey residents employed by the federal government seeking to avoid the wage tax imposed by the City of Philadelphia (Philadelphia). *See, e.g., City of Philadelphia v. Austin,* 86 *N.J.* 55 (1981); *City of Philadelphia v. Smith,* 82 *N.J.* 429 (1980); *City of Philadelphia v. Stadler,* 164 *N.J.Super.* 281 (D.Ct.1978). In this appeal the question is whether the amendment to *N.J.S.A.* 2A:17–17, which provides that "[n]o judgment obtained for the payment of any employment wage tax shall be enforced" by levying on the taxpayer's real property, violates

the full faith and credit clause of the United States Constitution. *U.S. Const.*, art. IV, § 1. Specifically, the issue is whether the State of New Jersey may prevent Philadelphia from enforcing a money judgment obtained for unpaid wage taxes by levying on a taxpayer's property. We hold that under the guise of changing a remedy, the State of New Jersey is denying full faith and credit to a judgment of a sister state. Accordingly, the amendment to *N.J.S.A.* 2A:17–17 violates the full faith and credit clause of the United States Constitution.

I

Ralph Bauer is a New Jersey resident employed in Philadelphia by the federal government. He is subject to the Philadelphia Wage and Net Profits Tax Ordinance, Philadelphia, Pa., Code ¶ 19–508 (Ordinance), but failed to pay the tax due under the Ordinance for the years 1972 through 1974. Philadelphia then instituted an action in Pennsylvania against Bauer for nonpayment of those Philadelphia wage taxes. Judgment was entered in favor of Philadelphia in the amount of $3,017.26.

The judgment was ultimately placed into the form of an Exemplified Judgment. In December 1980 Philadelphia commenced an action to obtain a judgment in the Camden County District Court. The District Court entered a judgment in the amount of $3,000, which recited that Philadelphia waived all amounts outside the then-jurisdictional limit of the District Court. The judgment was subsequently docketed in the Superior Court and became a Superior Court judgment. Bauer did not appeal from the judgment.

After attempts to attach Bauer's personal property proved inadequate and unavailing, further execution efforts were commenced, resulting in a request to the Sheriff of Camden County to schedule a sale of Bauer's real property. The Sheriff's sale originally was scheduled for November 4, 1981, but was adjourned three times until March 5, 1982.

In the interim, the New Jersey Legislature amended *N.J.S.A.* 2A:17–17, which provides for satisfaction of judgments by levy on real property. The amendment provides:

> No judgment obtained for the payment and satisfaction of any employment wage tax, including penalties, shall be enforced pursuant to this section. [*L.* 1982, *c.* 548, § 1.]

As originally proposed, the amendment was much broader. It would have exempted real estate from levy to satisfy a judgment obtained for wage taxes or "any judgment of any court out of this State which had an underlying cause of action which would be subject to the jurisdiction of the county district courts in this State." *See Assembly Bill No. 3547* (June 25, 1981). This latter language was deleted by amendment of the bill. *See Senate Judiciary Committee, Statement to Assembly Bill No. 3547* (December 7, 1981). According to the Governor, in its final form "[t]he intent of the bill [was] to block the City of Philadelphia from attaching or disposing of the property of New Jersey residents to satisfy judgments for unpaid Philadelphia city wage taxes." *Governor's Office,* "Message on Signing."

This amendment became effective on January 12, 1982. Soon thereafter, Bauer filed a complaint to enjoin permanently the execution on the judgment. The action was based on the amendment to *N.J.S.A.* 2A:17–17. The trial court granted the injunctive relief and the Appellate Division affirmed the trial court's Order. We granted Philadelphia's appeal as of right on the grounds that the case involves a substantial question arising under the Constitution of the United States or this state. *R.* 2:2–1. We now reverse the judgment of the Appellate Division.

## II

The United States Constitution provides that "Full Faith and Credit shall be given in each state to the public acts records, and Judicial Proceedings of every other state." *U.S. Const.* art. IV, § 1. The full faith and credit required to be given

judgments does not depend on the Constitution alone. Congress also enacted 28 *U.S.C.A.* § 1738, which provides in part: "[J]udicial proceedings * * * shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such State * * * from which they are taken."

The clear purpose of the full faith and credit clause, along with other constitutional provisions with the same purpose, was to alter the status of the states as independent sovereigns and to integrate them into a single nation here so that a party could enforce a just claim regardless of the claim's state of origin. The full faith and credit clause thus became a nationally unifying force. *See Milwaukee Cty. v. M.E. White Co.*, 296 *U.S.* 268, 276–77, 56 *S.Ct.* 229, 233–34, 80 *L.Ed.* 220, 228 (1935); *City of Philadelphia v. Austin, supra,* 86. *N.J.* at 58.

■ It is well established that both the Constitution and 28 *U.S.C.A.* § 1738 require that a state must accord full faith and credit to a judgment of a sister state. This is so even if the underlying cause of action in the original judgment would not necessarily be a valid cause of action in the state providing the forum for enforcement. *Id.* We have applied this well-recognized principle to cases involving the tax at issue and held that a Pennsylvania judgment for monies owed under the Philadelphia wage tax, including fines and penalties, is entitled to full faith and credit when reduced to a New Jersey money judgment. *See City of Philadelphia v. Austin, supra,* 86 *N.J.* 55; *City of Philadelphia v. Smith, supra,* 82 *N.J.* 429.

■ It is equally well established that under the doctrine of merger

[a] cause of action on a judgment is different from that upon which the judgment was entered. In a suit upon a money judgment for a civil cause of action the validity of the claim upon which it was founded is not open to inquiry, whatever its genesis. Regardless of the nature of the right which gave rise to it, the judgment is an obligation to pay money in the nature of a debt upon a specialty. [*Milwaukee Cty. v. M.E. White Co., supra,* 296 *U.S.* at 275, 56 *S.Ct.* at 233, 80 *L.Ed.* at 227.]

Thus, the judgment obtained in the enforcing state on the foreign judgment becomes a simple money judgment, its original identity having been lost because of the merger doctrine.

In *People of New York v. Coe Mfg. Co.*, 10 *N.J.Misc.* 1161, 1163 (Sup.Ct.1932), aff'd, 112 *N.J.L.* 536 (E. & A.), *cert.* den., 293 *U.S.* 576–77, 55 *S.Ct.* 89, 79 *L.Ed.* 674 (1934), we applied the doctrine of merger and stated that "the suit in this court is not for the collection of taxes, but for the collection of a judgment which is based on a tax claim, and the original character of the claim has been merged in the judgment." Likewise, we have applied the doctrine of merger to judgments originally based on a claim for nonpayment of Philadelphia wage taxes. In *City of Philadelphia v. Austin, supra,* 86 *N.J.* at 61 we held that for purposes of the full faith and credit clause a fine for failure to file returns for Philadelphia wage tax, once reduced to judgment, was to be treated the same as any other money judgment. We stated that:

> We recognize that the reduction of the penalty to a civil judgment is a significant change in its status. That metamorphosis diminishes the penal nature of the claim and enhances the enforceability of the judgment under the Full Faith and Credit Clause. As the Milwaukee County Court wrote, "[a] cause of action on a judgment is different from that upon which the judgment was entered." [*Id.* (citation omitted).]

*See also City of Philadelphia v. Smith, supra,* 82 *N.J.* 429 (for purposes of full faith and credit, a penalty imposed for nonpayment of Philadelphia wage tax, once reduced to judgment, is to be treated like any other money judgment).

■ Applying the doctrine of merger to this case leaves no doubt that the judgment is not a judgment based on a cause of action for the Philadelphia wage tax but a money judgment issued by the Superior Court of New Jersey based on the foreign judgment. The original cause of action is not before the New Jersey courts.

■ *N.J.S.A.* 2A:17–17 blocks execution on real property on two grounds: (1) on judgments obtained in county district courts and (2) on judgments obtained for payment and satisfac-

tion of any employment wage tax. The first ground is not relevant here despite the dissent's attempt to make it appear so. The judgment at issue is not a county district court judgment but a Superior Court judgment. As such, it is entitled to a lien on real property unless it is deemed to be a judgment obtained for the payment of any employment wage tax. Thus, without going behind the judgment, the amendment on its face is not applicable here. Only by ignoring the simple money judgment and inquiring into the original cause of action may the amendment conceivably apply to the judgment before the court. Such an inquiry violates the general purpose and specific dictates of the full faith and credit clause. It leads inexorably to states imposing improper restrictions on the enforcement of judgments from sister states based on the nature of the original claim. *See generally Milwaukee Cty. v. M.E. White Co.*, *supra*, 296 *U.S.* at 276–77, 56 *S.Ct.* at 233–34, 80 *L.Ed.* at 228 (noting that the weightiness of the purpose and the numerous situations in which full faith and credit must be given to fulfill that purpose); *City of Philadelphia v. Austin*, *supra*, 86 *N.J.* at 58 (explaining the purpose of the full faith and credit clause).

## III

Mr. Bauer and the dissent argue that *N.J.S.A.* 2A:17–17 does not deny full faith and credit to the Pennsylvania judgment because the amendment treats the judgment like all other judgments and merely forecloses a single enforcement remedy. This argument ignores the realities of the situation. First, the judgment is a New Jersey Superior Court judgment, not a county district court judgment as the dissent implies. The treatment of this judgment is not the same as the treatment of other New Jersey Superior Court judgments. Moreover, all the relevant indicia, including the legislative history, the limited class of one, the alleged purpose of the amendment, the elimination of any effective remedy, and the fact that the amendment itself is against the declared public policy of the state, confirm that the amendment violates the full faith and credit clause.

■ Because of the extreme importance of the full faith and credit clause to our national unity, "[t]hat purpose ought not lightly to be set aside * * *." *Milwaukee Cty. v. M.E. White Co., supra,* 296 *U.S.* at 277, 56 *S.Ct.* at 234, 80 *L.Ed.* 228. As we stated in *Coons v. American Honda Motor Co.,* 94 *N.J.* 307, 318 (1983): "The legislature cannot accomplish indirectly that which it could not do directly." A state may not by subterfuge refuse to give full faith and credit to the judgment of a sister state.

As is evident from the Governor's statement, "[t]he intent of the bill is to block the City of Philadelphia from attaching or disposing of the property of New Jersey residents to satisfy judgments for unpaid Philadelphia city wage taxes." Indeed, it is difficult to believe that the amendment is not aimed at Philadelphia's judgments, since no New Jersey municipality has an employment wage tax subject to the amendment. Thus, the argument that Philadelphia's judgments are treated like any other judgments in New Jersey is specious.

Further support for the position that the amendment does more than deny a method of enforcing a valid judgment of a sister state is found by examining the purpose of the amendment. The supposed purpose behind *N.J.S.A.* 2A:17–17 is to protect debtors from losing their homes to satisfy relatively small and insignificant judgments, *see Assembly Judiciary, Law, Public Safety and Defense Committee, Statement to Assembly Bill No. 3547* (November 16, 1981) ("In most cases, real estate represents the primary personal or family asset and, therefore, should be subject to execution only in matters of a more significant nature."). That the method chosen to fulfill this purpose cannot possibly do so suggests that the amendment is aimed squarely at attempting to avoid recognizing valid Pennsylvania judgments. There is absolutely no evidence to indicate that a wage-tax judgment levy is in any way different from any other judgment levy either in kind or number. The removal of the right to levy on real property to enforce a wage-tax judgment without imposing a similar restriction on

other judgment creditors does not offer the homeowner much protection. Had the real purpose been to protect real estate from execution in insignificant matters, the amendment would have classified judgments based on their size, not their source. As the statute reads now, the home of a taxpayer who owed Philadelphia $15,000 on a judgment for unpaid wage taxes would be protected, but the home of a poor person who owed a store $1,000 would not be.

Most significantly, the amendment denies Philadelphia the only effective means of enforcing its judgment. To deny such enforcement is in reality to render the judgment virtually worthless, in clear violation of the full faith and credit clause.

## IV

Although judgments of sister states must be given full faith and credit, local law may determine the scope and nature of available remedies. *See Gulick v. Loder*, 13 *N.J.L.* 68, 69–70 (Sup.Ct.1832); *Restatement (Second) of Conflict of Laws* § 99 at 303 (1971); *see also M'Elmoyle v. Cohen*, 38 *U.S.* 312, 13 *Pet.* 312, 10 *L.Ed.* 177 (1839) (upholding Georgia statute providing that actions on foreign judgments must be brought within five years); *Sainz v. Sainz*, 36 *N.C.App.* 744, 746, 245 *S.E.*2d 372, 374 (1978) (North Carolina court not required to enforce a judgment ordering specific enforcement of a separation agreement because the remedy of specific enforcement was not available in North Carolina).

Nevertheless, it is clear that a state may not, by unduly burdening the means to enforce a foreign judgment, refuse to give full faith and credit to that judgment.

A state which may not constitutionally refuse to open its courts to a suit on a judgment of another state because of the nature of the cause of action merged in the judgment obviously cannot by the adoption of a particular rule of liability or of procedure, exclude from its courts a suit on the judgment. [*Titus v. Wallick*, 306 *U.S.* 282, 292, 59 *S.Ct.* 557, 562, 83 *L.Ed.* 653, 659–60 (1939) (citation omitted).]

Moreover, the enforcing state "may not, under the guise of merely affecting the remedy, deny the enforcement of claims otherwise within the protection of the full faith and credit clause * * *." *Broderick v. Rosner*, 294 *U.S.* 629, 643, 55 *S.Ct.* 589, 592, 79 *L.Ed.* 1100, 1107 (1935).

The reality of the situation is that Philadelphia has no viable alternatives to execution on real property. Garnishment of the wages of federal employees is not possible because the federal government has sovereign immunity. *See Johnson v. Johnson*, 332 *F.Supp.* 510, 511 (E.D.Pa.1971); *Applegate v. Applegate*, 39 *F.Supp.* 887 (E.D.Va.1941). Execution on personalty is not effective when, as here, there is insufficient personalty to satisfy the judgment. Liens on real property may force Philadelphia to forego the tax money for years until the real property is sold. Finally, an equitable payout order not only would require a court proceeding but perpetually would be subject to attempted modifications by the debtor. In view of the tenacity of New Jersey residents in avoiding payment of the Philadelphia wage tax, use of this remedy undoubtedly would lead to further court battles and require Philadelphia to invest substantial time and money appearing in court to enforce the order. In addition, in many cases, upon retirement, sickness, or death of the debtor, the order would be unenforceable.

The situation, then, is very similar to that in *Broderick v. Rosner, supra,* 294 *U.S.* 629, 55 *S.Ct.* 589, 79 *L.Ed.* 1100. In *Broderick,* the United States Supreme Court struck down a New Jersey statute that barred actions at law to enforce the statutory liability of stockholders to corporate creditors that arose under the laws of another state. An action in equity was permissible but all the stockholders and creditors were necessary parties. As here, the Court noted that the requirements were so burdensome as effectively to deny recognition of the statute of the sister state. *Id.* at 639–40, 55 *S.Ct.* at 591, 79 *L.Ed.* at 1105–06. Further, there was no policy involved to which recognition could be accorded. As the Court stated:

Obviously recognition could not be accorded to a local policy of New Jersey, if there really were one, of enabling all residents of the State to escape from the performance of a voluntarily assumed statutory obligation, consistent with morality, to contribute to the payment of the depositors of a bank of another State of which they were stockholders. [*Id.* at 644, 55 *S.Ct.* at 593, 79 *L.Ed.* at 1108.]

The court in *Hieston v. National City Bank of Chicago*, 280 *F.* 525 (D.C.Cir.1922), reached a similar conclusion in a case involving an enactment to exempt property from execution. Under that statute, the enforcement of a foreign judgment against the property of a judgment debtor would not have been possible had the original judgment been entered in the enforcing state. The statute claimed to bar execution on a married woman's own property for the debts of her husband. The court rejected the argument that the enforcement of the foreign judgment was therefore contrary to the laws of the enforcing state and invalid as against the policies of the enforcing state. That court refused to deny full faith and credit to the foreign judgment, stating:

It is conceded that the judgment is in every respect valid and enforceable in the state of Maryland, but it is urged on behalf of defendant that the cause of action which formed the basis of that judgment may be inquired into to determine whether the judgment may be enforced against the property of the plaintiff in this District. To sustain this contention would mean the denial of full faith and credit to the judicial proceedings resulting in the Maryland judgment. [*Id.* at 526.]

*See also Lamb v. Powder River Live Stock Co.*, 132 *F.* 434, 440 (8th Cir.1904) ("the original cause of action is merged in the judgment").

Here, as distinct from the *Hieston* case, the enforcement of the judgment conforms with New Jersey policy. As in the *Broderick* case, there is no valid state policy to justify a refusal to enforce Philadelphia's judgment. Recognition cannot be afforded any policy enabling citizens to escape paying taxes. As we stated in *City of Philadelphia v. Smith, supra*, 82 *N.J.* at 434: "Obviously it is to the mutual advantage of neighboring states to recognize and enforce one another's tax revenue

laws." Similarly, in *City of Philadelphia v. Austin, supra*, 86 *N.J.* at 65–66, we stated:

[T]axes are the lifeblood of government, the vital force needed to sustain the public interest. Stated otherwise, "Taxes are what we pay for civilized society." *Compania General de Tabacos v. Collector*, 275 *U.S.* 87, 100, 48 *S.Ct.* 100, 105, 72 *L.Ed.* 177 (1927). When one taxpayer fails to bear his or her fair share, the burden becomes heavier on other taxpayers. The inability to enforce a tax obligation in another state increases the burden on citizens of the taxing state. Tax evasion does not reduce the cost of government; it merely shifts the cost to others.

Our examination of the totality of the circumstances here leads to the conclusion that the amendment is an attempt by the State of New Jersey to deny full faith and credit to a judgment of a sister state under the guise of merely denying a particular remedy. It is tempting and popular to favor the interests of your own citizens over the interests of another state, but this favoritism and parochial self-interest was exactly what the full faith and credit clause was intended to prevent. Accordingly, we hold that *N.J.S.A.* 2A:17–17 violates the full faith and credit clause of the United States Constitution.

The judgment below is reversed.

SCHREIBER, J., dissenting.

Despite the novel approach of the majority to the full faith and credit clause of the federal constitution, a careful analysis of the law satisfies me, as it did the trial court and three Appellate Division judges, that *N.J.S.A.* 2A:17–17 meets that constitutional standard.

Article IV, section 1 of the United States Constitution requires that each state shall give full faith and credit to the judicial proceedings of every other state. The federal implementing statute provides that judgments "shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such State * * * from which they are taken." 28 *U.S.C.A.* § 1738 (West 1966). Simply put, New Jersey must give full faith and credit to a monetary judgment obtained in Pennsylvania irrespective of its

underlying basis. *City of Philadelphia v. Austin*, 86 *N.J.* 55, 66 (1981) (Schreiber, J., concurring).

It is important to note that the Pennsylvania judgment is not effective in New Jersey until reduced to a new judgment in New Jersey. *Anglo-American Provision Co. v. Davis Provision Co.*, 191 *U.S.* 373, 374, 24 *S.Ct.* 92, 93, 48 *L.Ed.* 225, 227 (1903); *Cole v. Cunningham*, 133 *U.S.* 107, 112, 10 *S.Ct.* 269, 270, 33 *L.Ed.* 538 (1890); *M'Elmoyle v. Cohen*, 38 *U.S.* (13 *Pet.*) 312, 324–25, 10 *L.Ed.* 177 (1839). At that point, after full faith and credit has been given so that the plaintiff then has a New Jersey judgment, the judgment stands on the same footing as other New Jersey judgments of like nature. In that process New Jersey may not inquire into the basis of the Pennsylvania judgment to determine the *validity* of that judgment. In *Milwaukee County v. M.E. White Co.*, 296 *U.S.* 268, 275, 56 *S.Ct.* 229, 233, 80 *L.Ed.* 220, 227 (1935), Justice Stone pointedly noted: "In a suit upon a money judgment for a civil cause of action the *validity* of the claim upon which it was founded is not open to inquiry, whatever its genesis. Regardless of the nature of the right which gave rise to it, the judgment is an obligation to pay money in the nature of a debt on a specialty. Recovery upon it can be resisted only on the grounds that the court which rendered it was without jurisdiction." (Emphasis added.)

The majority distorts this principle with the notion that somehow a merger of judgment and its basis exists for *all* purposes. Nothing could be further from the truth. One need only review the cases in which the Supreme Court has not accepted the face value of a foreign judgment. *See Milwaukee County, supra*, 296 *U.S.* at 273, 56 *S.Ct.* at 232, 80 *L.Ed.* at 225–26, and cases cited therein.

After paying lip service to the established proposition that local law may determine the remedies available to satisfy a judgment obtained as a result of full faith and credit, the majority then concludes that New Jersey may not deny enforce-

ment of claims protected by the full faith and credit clause by affecting the remedy. However, it is New Jersey law that governs the remedy to be afforded to judgments, and to that extent New Jersey law may affect judgments that are founded on judgments of a sister state. For example, a foreign judgment would not enjoy a priority to which it was entitled in the foreign state, but only that which the *lex fori* gives it by its law. *See Milwaukee County, supra,* 296 *U.S.* at 276, 56 *S.Ct.* at 233, 80 *L.Ed.* at 227; *Cole v. Cunningham, supra,* 133 *U.S.* at 112, 10 *S.Ct.* at 270, 33 *L.Ed.* at 541.

*N.J.S.A.* 2A:17–17, the statute at issue here, relates to a remedy available to a judgment creditor. It reads as follows:

> All real estate shall be liable to be levied upon and sold by executions to be issued on judgments obtained in any court of record in this State, except county district courts, for the payment and satisfaction of the debt, damages, sum of money and costs so recovered or to be recovered; but no real estate of any testator or intestate shall be sold or in anywise affected by any judgment or execution against executors or administrators. No judgment obtained for the payment and satisfaction of any employment wage tax, including penalties, shall be enforced pursuant to this section.

The statute has two significant exclusions. First, a district court judgment may not be satisfied by levy and sale of realty. Second, any judgment obtained on account of any employment wage tax also may not be satisfied in that manner. Neither exclusion violates the full faith and credit clause. All such judgments, district court or those obtained on account of unpaid employment wage taxes, are treated alike. The so-called merger doctrine advocated by the majority invalidates the exclusion of judgments based on the Philadelphia employment wage tax and not those owed to New Jersey governmental bodies. Thus, instead of being placed on a parity with New Jersey judgments, those of the sister state are given superior status.

Moreover, the Pennsylvania judgment was given full faith and credit when it was sued upon in the Camden County District Court and became a New Jersey judgment. At that point the full faith and credit clause has expended itself. As a judgment of the New Jersey District Court, it did not constitute

a lien on real property. No one could reasonably contend that a Pennsylvania judgment that could have been the basis for a New Jersey Superior Court judgment but was not would automatically be entitled to a lien on New Jersey real property. The reason why that is so is because district court judgments had not been given that force by the Legislature. So even though the Pennsylvania judgment as a district court judgment could not be satisfied by execution and sale of New Jersey realty, the argument that the statute did not include that remedy would certainly not be invalidated under the full faith and credit clause.

Here, Philadelphia subsequently docketed the district court judgment as a Superior Court judgment. *N.J.S.A.* 2A:18–32. The clerk's docket entry stated the name of the county district court in which the judgment was obtained. *N.J.S.A.* 2A:18–34. After docketing, the judgment "operate[d]" as though it were a judgment obtained in an action originally commenced in the Superior Court. *N.J.S.A.* 2A:18–38. At that point in time the Pennsylvania judgment was treated in the same fashion, insofar as remedies are concerned, as any other Superior Court judgment based upon an employment wage tax.

The majority places substantial reliance on the case of *Broderick v. Rosner*, 294 *U.S.* 629, 55 *S.Ct.* 589, 79 *L.Ed.* 1100 (1935). In *Broderick*, the Superintendent of Banks of New York brought an action in New Jersey against 557 stockholders of a New York bank to recover unpaid assessments levied on them pursuant to New York law. A New Jersey statute provided that if a "statutory personal liability be created by or arise from the statutes or laws of any other state or foreign country," then enforcement would be limited to an action "in the nature of an equitable accounting." *Id.* at 638, 55 *S.Ct.* at 591, 79 *L.Ed.* at 1105. The New Jersey statute also provided that all the corporation's creditors and shareholders were necessary parties. The Supreme Court wrote:

A State may adopt such system of courts and form of remedy as it sees fit. It may in appropriate cases apply the doctrine of *forum non conveniens.*

*Anglo-American Provision Co. v. Davis Provision Co.,* 191 *U.S.* 373, 48 *L.Ed.* 225, 24 *S.Ct.* 92. But it may not, under the guise of merely affecting the remedy, deny the enforcement of claims otherwise within the protection of the full faith and credit clause, when its courts have general jurisdiction of the subject matter and the parties. [294 *U.S.* at 642–43, 55 *S.Ct.* at 592–93, 79 *L.Ed.* at 1107.]

The Court observed that if the statute had imposed the single condition of limiting the New Jersey proceeding to suits only in equity and not in law, the law would have passed constitutional muster. The requirements as to necessary parties, however, were legally and practically impossible for the Superintendent to meet. *Id.* at 639–40, 55 *S.Ct.* at 591, 79 *L.Ed.* at 1105–06. *Broderick* is not this case. There the statute expressly was directed to and applied only to actions arising under the laws of another state. Here the statute was not so limited and Philadelphia is not deprived of legal and effective means of enforcing its rights. All that is required by the full faith and credit clause is that the foreign judgment, when sued on in the for-um state, be treated the same as any other like suit for a sum due and owing.

It is in Part III of its opinion that the majority discloses its true motivation, stressing that the statute affects a class of one, claiming that the statute eliminates "any effective reme-dy" for Philadelphia, and asserting that the statute "is against the declared public policy of the state." *Ante* at 379–81. None of these contentions is sound. The majority argues that the provision excluding employment wage tax judgments in *N.J.S.A.* 2A:17–17 was aimed at Philadelphia. That is not dispositive. The statute is written broadly and no matter what governmental body—state, county, or municipality—adopts a wage tax and obtains a judgment for its satisfaction, all such judgments will be treated alike.

The public policy of the State supports the statute. Preventing a levy on realty for relatively small judgments ascribable to wage taxes is assuredly a valid purpose. *See Assembly Judiciary, Law, Public Safety and Defense Committee,* Statement to Assembly Bill No. 3547 (November 16, 1981) (expressing the policy that "the collection of judgments in these types of matters by execution against real property is inappropriate and

unwarranted. In most cases, real estate represents the primary personal or family asset and, therefore, should be subject to execution only in matters of a more significant nature."). The Governor's message upon which the majority relies reads as follows:

A–3547 * * * would shield real estate from levies or judgments for the payment of wage taxes and penalties. The intent of the bill is to block the City of Philadelphia from attaching or disposing of the property of New Jersey residents to satisfy judgments for unpaid Philadelphia city wage taxes. However, the legislation does not deny *recognition* of the wage tax judgments, simply one method of enforcement.

The Governor's comments should be read in context. First, the "intent" to block the City of Philadelphia does not negate the general intent of the Legislature. Second, the Governor points out that recognition of wage tax judgments is *not* affected, but only one method of enforcement is.

When the majority quarrels with the Legislature's policy, *ante* at 380, it simply replaces its concept of what it believes is appropriate for that of the duly-elected representatives of the people. There is a failure to recognize that the Legislature may attack a problem segmentally, *David v. Vesta Co.*, 45 *N.J.* 301, 315 (1965) (Legislature may proceed cautiously, "step by step," though objective could be achieved by "more expansive classification"), and that the Legislature may functionally and realistically consider the problem differently from the way a court does. Further, I believe that the majority in order to make its point exaggerates the likely magnitude of an individual's wage employment tax debt. *See City of Philadelphia v. Smith*, 82 *N.J.* 429, 431 (1980) (four judgments for unpaid wage employment taxes in amounts ranging from $1,413 to $2,216). There is nothing in the record to support the hypothetical example of a $15,000 judgment for unpaid wage employment taxes. *Ante* at 380.

Remedies other than the sale of realty exist to satisfy wage tax judgments. In the first place, levy and execution on personal property are available. Bank accounts, securities, motor vehicles, and innumerable other assets may be seized and

sold. Second, though the realty may not be sold to satisfy the debt, the judgment, having been docketed in the Superior Court, would remain a lien on the land. Third, though garnishment of wages of a federal employee is not possible, an order directed to the debtor to pay in installments on account of the judgment is available. *N.J.S.A.* 2A:17–64 frequently has been used "when the judgment debtor requests that no wage execution be issued for fear that it will adversely affect his standing with his employer or result in his dismissal." E. Fulop, "Collection of Judgments," in 20 *New Jersey Practice* § 1911 (1973). Judge Fulop also observed that:

> A judgment debtor may be required to pay out of income received from the state, or any county, municipal or other governmental source. Although no wage execution can be issued against wages or other money received from the Federal Government, the judgment debtor may be required to pay out of such income, provided that it is not exempt under State or Federal law. [*Id.* (footnotes omitted).]

Philadelphia's district court judgment should be and is on the same footing as any other district court judgment. None is a lien on realty. Moreover, Philadelphia's district court judgment, when docketed as a Superior Court judgment, is treated the same as other New Jersey Superior Court judgments based on employment wage taxes. To say that all district court judgments and all Superior Court judgments, including those of Philadelphia, whose satisfaction may not be accomplished by execution and sale of realty are virtually "worthless," *ante* at 380, is unsupported in fact and in law.

I would affirm.

*For reversal* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*For affirmance* —Justice SCHREIBER—1.