MARINA ASSOCIATES, d/b/a Harrah's Marina Hotel Casino, Plaintiff-Appellant, v. SYDWIN N. BARTON, Defendant-Appellee.

First District (5th Division)   No. 1—88—2802

Opinion filed November 16, 1990.

Charles N. Brusso & Associates, of Chicago (Timothy J. O'Donovan, of counsel), for appellant.

Gordon & Gordon, Ltd., of Chicago (Robert E. Gordon and Lawrence G. Gordon, of counsel), for appellee.

PRESIDING JUSTICE COCCIA* delivered the opinion of the court:

Plaintiff, Marina Associates, appeals from an order of the circuit court of Cook County dismissing its petition for the registration of a foreign judgment in Illinois. For the following reasons, we reverse and remand.

Marina Associates sued defendant, Sydwin N. Barton, to collect for credit which it had extended to Barton, for the purposes of gam-

---

*Justice R. Eugene Pincham participated in this case prior to his resignation. Since that time, Presiding Justice Michel A. Coccia was designated the third member of the panel and has read the record and briefs and listened to the oral argument tape.

bling at its casino located in New Jersey. Appellee does not question either the personal or subject matter jurisdiction of the New Jersey court which entered the judgment, nor did appellee repay any part of the debt, nor was the debt ever forgiven, released, or waived. (See *Thompson v. Safeway Enterprises, Inc.* (1978), 67 Ill. App. 3d 914, 385 N.E.2d 702.) On February 26, 1986, the superior court of New Jersey entered a money judgment based on the indebtedness, in the amount of $11,333.44, plus costs, in favor of appellant and against appellee. On February 19, 1988, appellant filed its petition in the circuit court of Cook County seeking to register the New Jersey money judgment as a final Illinois judgment, pursuant to the Uniform Enforcement of Foreign Judgments Act (Ill. Rev. Stat. 1987, ch. 110, par. 12—601 *et seq.*). Appellee resisted the filing of appellant's foreign judgment in Illinois, successfully arguing before the court that the loan upon which the foreign judgment was predicated was a gambling debt and, accordingly, void under the criminal law of Illinois, as well as being in violation of Illinois public policy. The circuit court judge agreed with the appellee's argument and entered judgment in his favor and against the appellant upon the authority of the criminal statute. Subsequently, appellant sought relief in this court.

The Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 1—1 *et seq.*) states as follows:

> "Gambling contracts void. (a) All promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages, or other securities or conveyances made, given, granted, drawn, or entered into, or executed by any person whatsoever, where the whole or any part of the consideration thereof is for any money or thing of value, won or obtained in violation of any Section of this Article are null and void.
>
> (b) Any obligation void under this Section may be set aside and vacated by any court of competent jurisdiction, upon a complaint filed for that purpose, by the person so granting, giving, entering into, or executing the same, or by his executors or administrators, or by any creditor, heir, legatee, purchaser or other person interested therein; or if a judgment, the same may be set aside on motion of any person stated above, on due notice thereof given.
>
> (c) No assignment of any obligation void under this Section may in any manner affect the defense of the person giving, granting, drawing, entering into or executing such obligation, or the remedies of any person interested therein."

(Ill. Rev. Stat. 1987, ch. 38, par. 28—7.)

The sole question to be decided is to what extent an Illinois trial court may refuse enforcement of a valid judgment of a sister State because the judgment seeks to enforce a gambling debt, valid where rendered, but contrary to the statutes and public policy of Illinois.

It is our view that the circuit court's ruling finds no support in the decided cases. The court's language in *Employers' Liability Assurance Corp. v. Coronet Insurance Co.* (1969), 106 Ill. App. 2d 24, 30-31, 245 N.E.2d 629, 632, could not have been more clear:

> "The initial filing in the case before us, and the proceeding following such filing, was in Louisiana. When plaintiff Employers' came to Illinois they already had a judgment against Coronet, and the action in Illinois was not a direct action against Coronet under the direct action statute of Louisiana, but was a proceeding on a Louisiana judgment in Illinois. The original action in Louisiana merged into or became part of the Louisiana judgment, and when the judgment came before the court in Illinois [which prohibited the filing of a direct action against an insurance company], it had the character of a Louisiana money judgment and was not a direct action in Illinois as against defendant insurance company. *** [W]e believe that for the purposes of an action on a foreign judgment in Illinois the court will not look behind the judgment itself to examine the nature of the cause of action."

The *Employers'* court went on to hold:

> "It is apparent, therefore, that the public policy of the State of Illinois as expressed in the statute and as applied in the case before us, is not to be considered when a party proceeds in Illinois to register a judgment obtained in a foreign State." 106 Ill. App. 2d at 34, 245 N.E.2d at 634.

■ Plaintiff's petition to the circuit court did not invoke the issue of judicial comity, nor was the circuit court petitioned to register plaintiff's New Jersey judgment in Illinois out of deference or respect to the laws of New Jersey, but, rather, plaintiff sought to register the New Jersey judgment under the authority of the full faith and credit clause of the United States Constitution. The full faith and credit clause provides:

> "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." (U.S. Const., art. IV, §1.)

The circuit court, accordingly, was compelled to register plaintiff's New Jersey money judgment in Illinois as a final judgment under

this constitutional mandate.

As Justice Schaefer stated, the full faith and credit clause represents a constitutional embodiment of the Federal policy that, unless judgments receive interstate recognition:

"[T]he insulated judicial systems of the several States may become sanctuaries within which obligations that have been fully and fairly adjudicated in another jurisdiction may be escaped." *Light v. Light* (1957), 12 Ill. 2d 502, 510, 147 N.E.2d 34, 39.

■ The United States Supreme Court has consistently ruled that the full faith and credit clause requires a State court to give the judgment of a sister State the same faith, credit, conclusive effect, and obligatory force as the judgment has by law or usage in the State from which it was taken. See *Christmas v. Russell* (1866), 72 U.S. (5 Wall.) 290, 18 L. Ed. 475; *Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co.* (1917), 243 U.S. 93, 61 L. Ed. 610, 37 S. Ct. 344.

The Supreme Court resolved the issues raised by plaintiff's petition more than 80 years ago, when the Court invoked the full faith and credit clause to require a State court to recognize and enforce a judgment of a sister State even though the judgment was based upon an original cause of action which was illegal in the State in which the enforcement was sought, in that it was a transaction involving gambling. (See *Fauntleroy v. Lum* (1908), 210 U.S. 230, 52 L. Ed. 1039, 28 S. Ct. 641.) That case sets forth the law that stands today.

In *Fauntleroy*, the plaintiff and the defendant had entered into a transaction in the State of Mississippi. The transaction involved trading on cotton futures, which was deemed to be a gambling transaction under the Mississippi law and, consequently, illegal and unenforceable under it. The plaintiff brought a civil action on the transaction, not in the trial court of Mississippi, where the action was sure to be defeated as a matter of law, but rather in the trial courts of Missouri, where the transaction was legal and enforceable.

The Missouri trial court entered a judgment in plaintiff's favor, whereupon the plaintiff brought an action in Mississippi to enforce the Missouri judgment. The defendant moved to dismiss those proceedings, arguing that the Mississippi court should not enforce the Missouri judgment due to the illegal nature of the transaction under Mississippi law. The Mississippi court agreed and refused to recognize and enforce the Missouri judgment in Mississippi.

On appeal, the Supreme Court reversed, ruling that the full

faith and credit clause required the Mississippi court to recognize and enforce the Missouri judgment, notwithstanding Mississippi law or public policy to the contrary. *Fauntleroy* is directly on point, is still the law of land, and is controlling.

Justice Holmes, in reversing the Mississippi court's judgment, reasoned:

> "Whether the award would or would not have been conclusive, and whether the ruling of the Missouri court upon that matter was right or wrong, there can be no question that the judgment was conclusive in Missouri on the validity of the cause of action." (*Fauntleroy*, 210 U.S. at 237, 52 L. Ed. at 1042, 28 S. Ct. at 643.)

Our own research has provided us with additional support for our conclusion.

In *Titus v. Wallick* (1939), 306 U.S. 282, 291, 83 L. Ed. 653, 659, 59 S. Ct. 557, 562, the Court followed *Fauntleroy*, in stating:

> "It is the judgment and not the cause of action which gave rise to it for which credit is claimed, and the constitutional mandate requires credit to be given to a money judgment rendered on a civil cause of action in another state, even though the forum would have been under no duty to entertain the suit on which the judgment was founded."

*Morris v. Jones* (1947), 329 U.S. 545, 91 L. Ed. 488, 67 S. Ct. 451, further clarifies the issue. The Supreme Court stated:

> "The function of the Full Faith and Credit Clause is to resolve controversies where state policies differ. Its need might not be so greatly felt in situations where there was no clash of interests between the States. The argument of convenience in administration is at best only another illustration of how the enforcement of a judgment of one State in another State may run counter to the latter's policies. But the answer given by *Fauntleroy v. Lum, supra*, is conclusive. If full faith and credit is not given in that situation, the Clause and the statute fail where their need is the greatest." *Morris*, 329 U.S. at 553, 91 L. Ed. at 497, 67 S. Ct. at 457.

In *Harrah's Club v. Mijalis* (La. Ct. App. 1990), 557 So.2d 1142, 1145, the court observed:

> "Other states with public policy prohibitions against gambling have given full faith and credit to judgments for gambling debts when the judgments were validly obtained and enforceable elsewhere."

See also *M & R Investments Co. v. Hacker* (Fla. Dist. Ct. App.

1987), 511 So.2d 1099; *GNLV Corp. v. Jackson* (Tex. Ct. App. 1987), 736 S.W.2d 893; *Hargreaves v. Greate Bay Hotel & Casino* (1987), 182 Ga. App. 852, 357 S.E.2d 305.

We note in closing that the American Law Institute has codified the holding of *Fauntleroy* in its Restatement (Second) of Conflict of Laws §117 (1971), which states:

> "Original Claim Contrary to Public Policy of State Where Enforcement of Judgment is Sought
>
> A valid judgment rendered in one State of the United States will be recognized and enforced in a sister State even though the strong public policy of the latter State would have precluded recovery in its courts on the original claim."

Section 117's comment *b* provides:

> "*Situation in the United States.* As between States of the United States, the rule of this Section is one of constitutional law. Provided that the judgment is valid \*\*\*, full faith and credit requires that it be recognized and enforced in a sister State even though the original claim is contrary to the strong public policy of the sister State. Fauntleroy v. Lum, 210 U.S. 230 (1908). This is a situation where no departure from the *command* of full faith and credit is permitted \*\*\*." (Emphasis in original.) Restatement (Second) of Conflict of Laws §117, comment *b*, at 339-40 (1971).

With these long-settled principles in mind, we reverse the judgment of the circuit court and remand the proceedings to that court with instructions to enter a final judgment in plaintiff's favor and against defendant.

Reversed and remanded with directions.

LORENZ and MURRAY, JJ., concur.