714 A.2d 360

ARNOLD, WHITE & DURKEE, A PROFESSIONAL CORPORATION, PLAINTIFF–APPELLANT, v. GOTCHA COVERED, INC., AND STRIPBIND, INC., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 11, 1998—Decided August 10, 1998.

Before Judges KING, KESTIN and CUFF.

*John L. Laskey*, argued the cause for appellant (*Dilworth, Paxson, Kalish & Kauffman*, attorneys; *Mr. Laskey*, on the brief).

*John J. Dell'Aquilo*, argued the cause for respondents.

The opinion of the court was delivered by

CUFF, J.A.D.

In this case we must decide whether the Full Faith and Credit Clause requires recognition of the judgment obtained by plaintiff in Texas, despite plaintiff's failure to advise defendants of their right to submit this fee dispute to arbitration pursuant to *R.* 1:20A–6. We hold that it does. We remand for further proceedings consistent with this opinion.

In September 1993, defendants Gotcha Covered, Inc. and Stripbind, Inc. were sued for patent infringement in the United States District Court for the District of New Jersey. Defendants retained plaintiff Arnold, White & Durkee, a law firm based in Texas, to represent them. In early 1994, two attorneys from the firm were admitted *pro hac vice* in the federal court in this district. In affidavits in support of this application, each attorney stated he would "abide by the New Jersey Court Rules."

The patent infringement suit was settled in September 1995. Soon thereafter, a fee dispute arose. Plaintiff claimed that defendants owed it $154,000. Plaintiff filed suit to collect the disputed fee in a Texas state court, but failed to notify defendants of their right to arbitrate this fee dispute. *See R.* 1:20A–6. Defendants filed no answer and plaintiff obtained a default judgment in the amount of $150,162.39 plus interest and attorneys' fees.

On August 13, 1996, plaintiff filed a complaint in the Superior Court of New Jersey, Law Division, to domesticate its judgment. Defendants responded with a motion to dismiss the complaint pursuant to *R.* 4:6–2(e) for failure to state a claim on which relief can be granted. Plaintiff's attorney argued that New Jersey was obligated to domesticate the Texas judgment pursuant to the Full Faith and Credit Clause of the United States Constitution, *U.S. Const.* art. IV, § 1. Defendants claimed that the Texas judgment was void and not entitled to full faith and credit.

The motion judge granted defendants' motion and dismissed plaintiff's complaint without prejudice. He recognized the federal rule that full faith and credit is usually given to foreign money judgments; however, he referred to a narrow exception which exists when an important public policy interest is at stake. Here, he noted that the Supreme Court of New Jersey has a substantial public policy interest in regulating the practice of law. Recognizing that fee disputes are a frequent cause of complaints against attorneys, the Supreme Court has promulgated rules for the resolution of fee disputes. *See R.* 1:20A. The motion judge concluded an attorney admitted *pro hac vice* agrees to be bound by all rules governing the practice of law in this State, including resolution of fee disputes. He also concluded that notice to the client of the right to submit a fee dispute was a jurisdictional prerequisite to filing a complaint for the collection of the fee. He reasoned that the Texas judgment was void because the plaintiff law firm failed to abide by the rules it had agreed to follow.

On appeal, plaintiff contends that the motion judge erred in dismissing its complaint. Plaintiff argues that a court of this state may not refuse to enforce a judgment of another state even if the cause of action could not have been maintained in New Jersey. We agree.

Article IV, Section 1 of the United States Constitution states:

Full Faith and Credit shall be given in each State to the public Acts, Records, and Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof.

This mandate has been codified at 28 *U.S.C.A.* § 1738 which states in pertinent part:

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

The Full Faith and Credit Clause requires that a judgment entered in one state be respected and enforced by the courts of another state provided that the first state had jurisdiction over the

subject matter and the parties. *Nevada v. Hall,* 440 *U.S.* 410, 421, 99 *S.Ct.* 1182, 1188, 59 *L. Ed.*2d 416, 425 (1979). The New Jersey Supreme Court has held that the federal Constitution and 28 *U.S.C.A.* § 1738 both require that our State must give full faith and credit to a sister state's judgment. *City of Philadelphia v. Bauer,* 97 *N.J.* 372, 377, 478 *A.*2d 773 (1984). This is true even in situations where the original judgment's underlying cause of action "would not necessarily be a valid cause of action in the state providing the forum for enforcement." *Ibid.*

The original purpose of the Full Faith and Credit Clause was to integrate the states into a unified nation in which a litigant could enforce a valid claim regardless of that claim's state of origin. *City of Philadelphia v. Austin,* 86 *N.J.* 55, 58, 429 *A.*2d 568 (1981). The Clause's goal, therefore, "was that a judgment would be as conclusive in every state as in the state where the judgment was rendered." *Ibid.; see also Magnolia Petroleum Co. v. Hunt,* 320 *U.S.* 430, 438, 64 *S.Ct.* 208, 213, 88 *L. Ed.* 149, 155 (1943), *rev'd on other grounds,* 448 *U.S.* 261, 100 *S.Ct.* 2647, 65 *L. Ed.*2d 757 (1980). A foreign judgment entitled to full faith and credit is *res judicata* as to any claim that was or could have been raised in the state of the judgment's origin. *Security Benefit Life Ins. Co. v. TFS Ins. Agency, Inc.,* 279 *N.J.Super.* 419, 425, 652 *A.*2d 1261 (App.Div.), *certif. denied,* 141 *N.J.* 95, 660 *A.*2d 1194 (1995). A judgment entered in violation of due process of law is not entitled to full faith and credit. *Hupp v. Accessory Distribs., Inc.,* 193 *N.J.Super.* 701, 708, 475 *A.*2d 679 (App.Div.1984).

Under the doctrine of merger, a cause of action to enforce a judgment is distinct from the cause of action upon which that judgment was entered. *Milwaukee County v. M.E. White Co.,* 296 *U.S.* 268, 275, 56 *S.Ct.* 229, 233, 80 *L. Ed.* 220, 227 (1935). In a suit to enforce a foreign money judgment, the validity of the original claim upon which the judgment was founded will not be analyzed. *Ibid.* The original judgment can be attacked only if the foreign state lacked jurisdiction or if the judgment was obtained through fraud or was entered contrary to due process. *Id.* at 275–

76, 56 *S.Ct.* at 233, 80 *L. Ed.* at 227; *see also Underwriters Nat'l Assurance Co. v. North Carolina Life,* 455 *U.S.* 691, 705, 102 *S.Ct.* 1357, 1366, 71 *L. Ed.*2d 558, 570 (1982) (noting that "before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree"); *Klaiber v. Frank,* 9 *N.J.* 1, 9, 86 *A.*2d 679 (1952) (refusing to extend full faith and credit to a Florida judgment obtained through fraudulent service of process). Therefore, a judgment acquired in the state of enforcement on a valid foreign judgment is simply a money judgment because its original identity is lost through the doctrine of merger. *Bauer, supra,* 97 *N.J.* at 378, 478 *A.*2d 773.

Recently, in *Baker v. General Motors Corp.,* 522 *U.S.* ——, 118 *S.Ct.* 657, 139 *L. Ed.*2d 580 (1998), the United States Supreme Court differentiated between the full faith and credit owed to laws (legislative enactments and common law) and to judgments. Justice Ginsberg stated that the Full Faith and Credit Clause does not require a state court to substitute the statutes or common law of other states for the statutes or common law of its state, particularly when the law of the other state is antithetical to the public policy of the forum state. *Id.* at ——, 118 *S.Ct.* at 663, 139 *L. Ed.*2d at 591–92. However, she emphasized that "[r]egarding judgments . . . the full faith and credit obligation is exacting." *Id.* at ——, 118 *S.Ct.* at 663, 139 *L. Ed.*2d at 592. Justice Ginsberg further observed that a court may be guided by the forum's public policy in its choice of law analysis; however, she emphasized that there is "no roving 'public policy exception' to the full faith and credit due *judgments." Ibid.; see Estin v. Estin,* 334 *U.S.* 541, 546, 68 *S.Ct.* 1213, 1217, 92 *L. Ed.* 1561, 1567 (1948); *see also City of Philadelphia v. Smith,* 169 *N.J.Super.* 156, 164, 404 *A.*2d 360 (App.Div.1979), *aff'd,* 82 *N.J.* 429, 413 *A.*2d 952 (1980); *City of Philadelphia v. Stadler,* 164 *N.J.Super.* 281, 290, 395 *A.*2d 1300 (Cty.Ct.1978), *aff'd,* 173 *N.J.Super.* 235, 413 *A.*2d 996 (App.Div.), *certif. denied,* 85 *N.J.* 465, 427 *A.*2d 563 (1980), *cert. denied,* 450 *U.S.* 997, 101 *S.Ct.* 1702, 68 *L. Ed.*2d 198 (1981); *Zelek v. Bros-*

*seau,* 47 *N.J.Super.* 521, 136 *A.*2d 416 (App.Div.1957), *aff'd,* 26 *N.J.* 501, 141 *A.*2d 17 (1958).

Case law is replete with instances in which full faith and credit has been accorded to money judgments of other states, even though the original claim is founded on a debt or a transaction contrary to the public policy of the state in which the money judgment is sought to be enforced. *Fauntleroy v. Lum,* 210 *U.S.* 230, 28 *S.Ct.* 641, 52 *L. Ed.* 1039 (1908) (judgment rendered in Missouri founded on trading in commodity futures, barred by the gambling laws of Mississippi, entitled to recognition in Mississippi); *Marina Assocs. v. Barton,* 206 *Ill.App.*3d 122, 151 *Ill.Dec.* 4, 563 *N.E.*2d 1110 (1990) (Illinois must recognize judgment obtained in New Jersey for gambling debt); *see also Valley Nat'l Bank of Arizona v. A.E. Rouse & Co.,* 121 *F.*3d 1332, 1335 (9th Cir.1997) (a federal court cannot refuse based on federal public policy to enforce a validly entered state judgment); *Bryant v. Shields, Britton & Fraser,* 930 *S.W.*2d 836, 840 (Tex.App.1996) (a court must extend full faith and credit to a valid judgment from another state regardless of the forum state's public policy); *International Recovery Sys., Inc. v. Gabler,* 208 *Mich.App.* 49, 527 *N.W.*2d 20, 22 (1995) (Nevada judgment for gambling debt enforceable in Michigan despite the fact that enforcement of gambling debts is contrary to Michigan's public policy); *Clark v. Rockwell,* 190 *W.Va.* 49, 435 *S.E.*2d 664, 667 (1993) (noting that states cannot deny full faith and credit based on public policy considerations); *Speyer v. Continental Sports Cars, Inc.,* 34 *Ohio App.*3d 272, 518 *N.E.*2d 39, 42 (1986) (holding that "[a] valid judgment rendered in Texas will be recognized and enforced in Ohio even though the strong public policy of Ohio would have precluded recovery in its courts on the original claim").

In dismissing plaintiff's complaint, the motion judge reasoned that enforcement of the Texas judgment was contrary to the public policy of this state. He acknowledged that the public policy exception to full faith and credit is very narrow but considered this State's interest in regulating the practice of law in this forum to

justify resort to the exception. In his decision he relied principally on five cases: *Nevada v. Hall, supra; Overmyer Co., Inc. v. Frick Co.,* 405 *U.S.* 174, 92 *S.Ct.* 775, 31 *L. Ed.*2d 124 (1972); *Swarb v. Lennox,* 405 *U.S.* 191, 92 *S.Ct.* 767, 31 *L. Ed.*2d 138 (1972); *Hupp v. Accessory Distribs., Inc., supra;* and *United Pac. Ins. Co. v. Estate of Angelo Lamanna,* 181 *N.J.Super.* 149, 436 *A.*2d 965 (Law Div.1981). We conclude that his reliance on these cases was misplaced.

In *Overmyer,* the issue was whether a cognovit note,[1] as authorized by Ohio law as well as the laws in many other states at that time, offended the Due Process Clause's requirement for notice and an opportunity to be heard. *Overmyer, supra,* 405 *U.S.* at 175, 92 *S.Ct.* at 777, 31 *L. Ed.*2d at 128. The Court held that a cognovit note is not *per se* violative of the Fourteenth Amendment, assuming that the note's signer waived his due process guarantees voluntarily, intelligently and knowingly "with full awareness of the legal consequences." *Id.* at 187, 92 *S.Ct.* at 783, 31 *L. Ed.*2d at 135. The majority noted that the Court's holding was not necessarily controlling in situations where the facts differed, indicating that in certain circumstances, the notes could violate due process. *Id.* at 188, 92 *S.Ct.* at 783, 31 *L. Ed.*2d at 135.

The issue in *Swarb,* as in *Overmyer,* was whether a cognovit note offended due process. *Swarb, supra,* 405 *U.S.* at 193, 92 *S.Ct.* at 769, 31 *L. Ed.*2d at 142. Citing the holding in *Overmyer,* the Court held that "under appropriate circumstances, a cognovit debtor may be held effectively and legally to have waived those rights he would possess if the document he signed had contained no cognovit provision." *Id.* at 200, 92 *S.Ct.* at 772, 31 *L. Ed.*2d at 146.

---

[1] A cognovit note is a writing that authorizes the holder to confess a judgment against the person who signs it. *Overmyer, supra,* 405 *U.S.* at 176, 92 *S.Ct.* at 777–78, 31 *L. Ed.*2d at 128–29. The purpose of this device is to allow the holder of the note to obtain a judgment without a trial. *Ibid.*

Neither *Overmyer* nor *Swarb* holds that a state can refuse to extend full faith and credit to another state's judgment on the basis that the legal foundation of the foreign judgment violates the forum state's public policy. The Court in *Overmyer* did cite two older Supreme Court cases in which the Court upheld refusals by state courts to extend full faith and credit on cognovit notes. *Overmyer, supra,* 405 *U.S.* at 178, 92 *S.Ct.* at 778–79, 31 *L. Ed.*2d at 130. These cases, however, actually support rather than undercut plaintiff's position. In the first cited case, the Court agreed that the judgment obtained on the note at issue violated due process. *See National Exch. Bank v. Wiley,* 195 *U.S.* 257, 25 *S.Ct.* 70, 49 *L. Ed.* 184 (1904). In the second cited case, the Court affirmed the lower court's conclusion that the directions contained on the face of the note for obtaining the judgment had not been followed. *Grover & Baker Sewing Mach. Co. v. Radcliffe,* 137 *U.S.* 287, 11 *S.Ct.* 92, 34 *L. Ed.* 670 (1890). These cases restate the general rule that another state is not required to recognize a foreign judgment entered in violation of due process of law. Moreover, neither *Overmyer* nor *Swarb* otherwise discussed the Full Faith and Credit Clause. The issue in both cases was limited to whether a cognovit note violated the Due Process Clause of the Fourteenth Amendment.

*United Pac. Ins. Co.* also involved the validity of a Pennsylvania judgment obtained on a cognovit note. *United Pac. Ins. Co., supra,* 181 *N.J.Super.* at 153, 436 *A.*2d 965. The full faith and credit discussion focuses on the due process implications of a foreign judgment founded on a cognovit note, not on the public policy exception to recognition of a foreign money judgment.

In *Hupp,* this court refused to accord full faith and credit to a Hawaii judgment under circumstances in which defendant's claim of lack of personal jurisdiction was never decided. *Hupp, supra,* 193 *N.J.Super.* at 709–11, 475 *A.*2d 679. Although a local procedure existed to resolve defendant's claim of lack of personal jurisdiction, the claim was never definitely adjudicated because the Hawaii state court held that the failure to file an answer was

inexcusable. *Id.* at 710–11, 475 *A.*2d 679. The record demonstrated, however, that defendant never conceded personal jurisdiction. *Id.* at 710, 475 *A.*2d 679. Under these special circumstances, we held that the trial court was obliged to hold a hearing to determine if Hawaii had acquired personal jurisdiction of defendant. *Id.* at 711, 475 *A.*2d 679.

The motion judge cited *Hupp* for the proposition that the violation of any local procedure warranted denying full faith and credit to a foreign judgment. In fact, *Hupp* stands for the opposite rule, for we said that a judgment "properly entered in accordance with local procedure is entitled to full faith and credit in any other state provided that the judgment is not entered in violation of due process of law." *Id.* at 708, 475 *A.*2d 679. The infirmity which caused us to hesitate to accord full faith and credit to the Hawaii judgment was the failure of the local procedure to determine defendant's oft-stated objections to Hawaii's jurisdiction over it. *Hupp* does not stand for the proposition that the violation of local procedure of the subsequent enforcing tribunal, which does not implicate due process concerns, empowers the subsequent state to deny full faith and credit to the foreign judgment.

Finally, *Nevada v. Hall, supra,* does not stand for the proposition that one state may refuse to enforce a money judgment entered by a court in another state due to a public policy disagreement. Plaintiffs were California residents who were involved in an automobile accident in California with a car driven by an employee of the University of Nevada, while on official business. Nevada sought to limit damages pursuant to a Nevada statute. In support of its argument, it contended that the Full Faith and Credit Clause required the California court to recognize the Nevada statute limiting damages against the State.

In its analysis of Nevada's claim, the Court considered the Nevada public policy in favor of limiting damages against the sovereign and the California policy in favor of full and fair compensation for victims of negligent conduct. However, it performed this interest analysis in a choice of law context. The Court

also stated that "the Full Faith and Credit Clause does not require a State to apply another State's law in violation of its own legitimate public policy." *Id.* at 421, 99 *S.Ct.* at 1189, 59 *L. Ed.*2d at 426.

In the context of an application to domesticate a foreign money judgment, a court of this State is obliged to recognize a foreign money judgment, unless the defendant demonstrates that the foreign jurisdiction lacked personal jurisdiction of defendant, the judgment was obtained by fraud or was entered contrary to due process. A court of this State must distinguish between the full faith and credit due to foreign laws and to foreign judgments. A court of this State must recognize that public policy differences are relevant only when the issue is the selection of the law which shall govern the resolution of the cause of action. Once the matter has been reduced to judgment, public policy differences are essentially irrelevant.

Here, the motion judge approached the matter as a choice of law issue. To be sure, Texas and New Jersey differ on the need for and the wisdom of arbitration to resolve a dispute over legal fees. This difference, however, neither affects the jurisdiction of the Texas court nor implicates due process considerations. The procedural prerequisites of notice and opportunity to elect arbitration were in the nature of legal defenses to the action. Once reduced to judgment, the cause of action and any defenses to it merged into the judgment. As such, plaintiff was entitled to the relief sought in its complaint: recognition and domestication of its Texas money judgment.

We share the motion judge's and defendants' concern that plaintiff should not be allowed to ignore the pledge to abide by the rules governing the practice of law by attorneys in this State. This concern, however, is not of such a nature to impugn the validity of a foreign judgment. Moreover, there are checks and balances in place which should discourage foreign attorneys admitted *pro hac vice* in this State from flouting the rules governing practice in the courts of this State which are sufficient to provide

adequate protection to the interest advanced by mandating that a client have the opportunity to arbitrate a fee dispute.

An attorney admitted *pro hac vice* in the United States District Court for the District of New Jersey is subject to the disciplinary jurisdiction of that court. *L. Civ. R.* 101.1(c)(4). *L. Civ. R.* 103.1(a) specifically provides that the Rules of Professional Conduct as revised by the New Jersey Supreme Court shall govern the conduct of the attorneys admitted to practice in the federal district court. *See United States v. Miller,* 624 *F.*2d 1198, 1200–01 (3d Cir.1980) (approving District Court incorporation of New Jersey law on professional ethics); *Cardona v. General Motors Corp.,* 939 *F.Supp.* 351, 355 (D.N.J.1996). The comment to R.P.C. 1.5 governing fees specifically refers to *R.* 1:20A for the procedure for resolution of fee disputes. Thus, an attorney admitted *pro hac vice* in the courts of this State or the federal district court is subject to discipline, which may include a denial of future *pro hac vice* admissions by reason of "countervailing considerations." *See Nat'l Ass'n for the Advancement of Colored People v. State of New Jersey,* 312 *N.J.Super.* 552, 557–59, 563–65, 711 *A.*2d 1355 (App.Div.1998). So as to provide opportunity for consideration of such questions, we direct the clerk of this court to forward this opinion to the clerk of the Supreme Court of New Jersey and the clerk of the United States District Court for the District of New Jersey.

We conclude that the arguments now advanced by defendants in this State are essentially choice of law issues which should have been raised in Texas. These arguments are not germane to defeat recognition and enforcement by the courts of this State of a money judgment validly entered in Texas. Defendants' only potentially valid arguments to bar recognition and enforcement of the Texas judgment are lack of personal jurisdiction by the Texas court or fraud on the Texas court.

Reversed and remanded.