848 A.2d 27

TARA ENTERPRISES, INC., PLAINTIFF–APPELLANT, v. DARIBAR MANAGEMENT CORPORATION AND MORRIS KLEIMAN, DEFENDANTS–RESPONDENTS.

KENNETH N. BOOK, PLAINTIFF–RESPONDENT, v. TARA ENTERPRISES, INC. AND BINOD SINHA, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 8, 2004—Decided May 13, 2004.

Before Judges WEFING, COLLESTER and FUENTES.

*Thomas A. Cunniff* argued the cause for appellants in both cases (*Fox, Rothschild, O'Brien & Frankel,* attorneys; *Richard E. Wegryn,* on the brief).

*Steven M. Greenberg,* attorney for respondents in A–438–02T1.

No brief was filed on behalf of respondent in A–1464–02T2.

The opinion of the court was delivered by

WEFING, J.A.D.

These two appeals were calendared before us back-to-back. Because they arise out of a related factual background, we consolidate them for purposes of this opinion. In A–438–02, plaintiff Tara Enterprises, Inc. appeals from a trial court order denying its motion to amend a judgment previously entered in its favor in the Chancery Division in Middlesex County. In A–1464–02, defendants Tara and its principal, Binod Sinha, appeal from a trial court order denying their motion seeking reconsideration of an order for judgment entered against them in the Law Division in Essex County. After reviewing the record in light of the contentions advanced on appeal, we affirm the order under review in A–438–02 and affirm in part and reverse in part the order under review in A–1464–02.

## I.

In 1995 Sinha commenced discussions with Morris Kleiman about the possibility of opening a convenience store. Kleiman told Sinha that he was the principal of San Francisco Convenience Stores, Inc. and that he was seeking investors to purchase individual convenience stores at a set price. According to Kleiman, this was to be a turn-key operation, that is, upon payment of the purchase price, the investor would receive a ready to function business. Further, the purchaser's only continuing obligation would be to pay a small percentage of the store's gross income to San Francisco, to purchase its inventory through suppliers designated by San Francisco and to pay a portion of the lease expenses.

In September 1995 Sinha and Kleiman, on behalf of San Francisco, executed a letter of intent and Sinha gave Kleiman a deposit of $5,000. In October, Kleiman told Sinha he had located a site for the store in Gillette and Sinha paid Kleiman an additional $11,500. In November, Kleiman identified another site in Chester and Sinha's wife, Renu Sinha, signed a letter of intent with Kleiman for this second location. Sinha gave Kleiman an additional $16,500.

Sinha consulted with an attorney (not his present counsel) who advised him to form a corporation for the purposes of contracting with Kleiman for these purchases and Sinha formed Tara Enterprises, Inc. When the contract was presented, however, it was not with Kleiman or with San Francisco but involved two other corporations controlled by Kleiman, Daribar Management Corporation and Greater North American Funding Corporation.

On February 7, 1996, Tara and Daribar signed a joint venture agreement for the Gillette location which reflected an agreed-upon purchase price of $150,000, with a $65,000 down payment and a promissory note for $85,000. Sinha paid San Francisco $48,500, which together with the $16,500 already paid, satisfied the down payment. Tara executed a promissory note for the remaining $85,000, payable to Greater North American. Payments on that note were to commence on May 8, 1996, the date Kleiman said the

Gillette store would be open. The note contained a warrant of attorney to confess judgment in Pennsylvania in the event Tara defaulted on the note.

On February 21, 1996, Tara and Daribar entered a second joint venture agreement, this for the Chester location. The terms were similar. Sinha gave Kleiman an additional $48,500, representing a total down payment of $65,000 for the Chester site, which was to be open by June 1, 1996. In addition, Tara executed another promissory note in favor of Greater North American for $85,000. This note also contained a warrant of attorney to confess judgment in Pennsylvania in the event Tara defaulted.

The following month, in March, Kleiman proposed to Sinha that the Gillette store be substantially expanded in size. Kleiman said the expansion would cost an additional $115,000 and Sinha agreed. He gave Kleiman an additional $30,000 and Tara executed another promissory note to Greater North American for $85,000. Again, the promissory note contained a warrant of attorney to confess judgment in Pennsylvania if Tara defaulted.[1]

Although Sinha's payments to Kleiman and the landlords totaled more than $200,000, the stores never opened. In September 1996 Sinha's attorney commenced an action in the Chancery Division in Middlesex County alleging breach of contract, theft, and violation of the Consumer Fraud Act, *N.J.S.A.* 56:8–1 to –135. The complaint sought specific performance of the two joint venture agreements, and, alternatively, damages. The only named plaintiff in that action was Tara, not Sinha, and the only named defendants in that action were Kleiman and Daribar. Ultimately, in December 1996, the Chancery Division judge entered an order for judgment in favor of plaintiff Tara and against Kleiman and Daribar for $208,818.58. All efforts to collect upon that judgment have been unsuccessful.

---

[1] We note for the sake of completeness that the warrant to confess judgment was, in each case, contained within the note itself and did not comply with *N.J.S.A.* 2A:16–9, thus rendering it ineffectual in New Jersey.

In January 1997, one month after entry of the Middlesex judgment, Greater North American, which was not a party to the Middlesex suit, confessed judgment against Tara and Sinha in Bucks County, Pennsylvania for $221,885.75 based upon the promissory notes executed in connection with the Gillette location. Tara and Sinha were both notified of the entry of this judgment and their right to seek relief within thirty days. No steps were taken, however. Sinha asserts he consulted with the attorney and was advised he need not do anything in light of the judgment entered in Middlesex County.

Two years later, in February 1999, Greater North American assigned all of its interest in this judgment to Kenneth N. Book for $44,200. This assignment included the provision that if Sinha were to "vacate the Pennsylvania Judgment, or be able to dismiss the New Jersey suit based upon lack of jurisdiction or insufficiency of service of process in the underlying Pennsylvania action," Greater North American would refund Book's money to him.

Based upon that assignment, Book filed suit against Tara and Sinha in Essex County, seeking to collect upon the Pennsylvania judgment. Sinha returned to his original attorney, who filed an answer and counterclaim. Sinha then turned to another attorney, who filed a petition in Pennsylvania to open or set aside the judgment by confession. Eventually, Sinha retained present counsel. The Pennsylvania court of common pleas denied the application to set aside the judgment and the Pennsylvania Superior Court affirmed. Sinha thus found himself in the position of having paid more than $200,000, receiving nothing in return, and yet subject to a judgment against him in Essex County for an additional $221,885.75.

Through present counsel, he returned to Middlesex County and filed a motion in June 2002 to amend the December 1996 judgment that had been entered in favor of Tara and against Daribar and Kleiman. Specifically, Sinha sought to add himself as a plaintiff and judgment creditor and Greater North American as a defendant and judgment debtor, to have the promissory notes executed

by Tara declared of no force and effect as of December 1996 when the Middlesex County judgment was first entered and to set aside the February 1999 assignment from Greater North American to Book. The court denied that motion.

As to the request to add Sinha and Greater North American as parties some six years after the judgment was originally entered, the court rejected plaintiff's reliance on *R.* 4:50. It said that rule was intended to provide relief from a judgment in appropriate instances, not to add additional parties. It refused to set aside the promissory notes, saying that question had been dealt with in Pennsylvania and relief, if any, had to be obtained in that state. It also declined to rule on the validity of the assignment to Book, for that was being litigated in the Essex action. The court's ruling on these questions is the subject of the appeal in A–438–02, to which we now turn.

## II.

On appeal, plaintiff Tara contends that the court erred in denying its requested relief. It urges that Kleiman's conduct in connection with the confession of judgment in Pennsylvania after having had a judgment entered against him in New Jersey was a fraud upon the court. Tara asserts that, as a result, its application to amend the judgment should not be considered time-barred. It also urges that the judgment should be amended because Greater North American and Daribar are simply alter egos of Kleiman and that all the claims asserted against Greater North American relate back to the claims against Kleiman.

*R.* 4:50–2 provides that a motion for relief from a judgment premised upon fraud must be made within one year from entry of the judgment. *R.* 4:50–3, however, removes from that limitations period a judgment obtained through fraud upon the court. Relief under this rule may be obtained "without limitation as to time." *Shammas v. Shammas*, 9 *N.J.* 321, 327, 88 *A.*2d 204 (1952). Tara points to cases which have permitted a judgment to be reopened some years after entry because a fraud was perpetrated upon the

court. *Von Pein v. Von Pein,* 268 *N.J.Super.* 7, 632 *A.*2d 830 (App.Div.1993) (concluding that a divorce judgment entered some six years earlier should be reopened because it had been obtained through fraud upon the court); *Hyland v. Kirkman,* 157 *N.J.Super.* 565, 385 *A.*2d 284 (Ch.Div.1978) (refusing to dismiss as untimely challenges to judgments entered in quiet title actions in the face of an allegation of "massive fraud upon the courts and land recordation system of the State."). *Id.* at 570, 385 *A.*2d 284.

■ The judgment which Tara seeks to amend, however, was not obtained by fraud but rather was obtained to provide redress for a fraud. The fraud to which Tara points in support of its motion is Kleiman's action in having a judgment by confession entered in Pennsylvania in the face of his knowledge of the Middlesex County judgment against him. If any fraud upon the court occurred, however, it was fraud directed to the Pennsylvania court, not the New Jersey court. We are satisfied that *R.* 4:50–3 provides no authority to amend the Middlesex County judgment some six years after its entry by the addition of an entirely new plaintiff and an entirely new defendant.

We are also satisfied that the trial court correctly denied the balance of the relief that Tara sought. The Middlesex County action was brought upon the joint venture agreements between Tara and Daribar. It did not involve the promissory notes executed in favor of Greater North American and there was thus no basis to join Greater North American as a party. Further, to the extent that Tara, by seeking to have the promissory notes set aside, challenged Book's attempt to collect upon the Pennsylvania judgment, its efforts were pointed in the wrong direction. That question was encompassed in the Essex County suit brought by Book to collect upon the Pennsylvania judgment. We thus affirm the order under review in A–438–02.

### III.

We turn now to the issues projected in A–1464–02, analysis of which requires some greater detail than we set forth earlier in this

opinion. In February 1999 Book filed suit in Essex County against both Tara and Sinha, seeking to have a judgment against both of them entered in New Jersey based upon the judgment by confession entered against both of them in Pennsylvania in January 1997. After being served in this 1999 action, Sinha initially returned to the attorney who had originally represented him. That attorney included in the answer he filed to the Essex County complaint an assertion that the Pennsylvania judgment "was obtained through fraudulent and improper means and is an invalid foreign judgment which cannot be enforced in the State of New Jersey."

Sinha then hired another attorney (again not his present counsel) who filed a petition on behalf of Tara and Sinha in June 2000 in Pennsylvania to open or set aside the Pennsylvania judgment which had been entered against them. The petition asserted that entry of the Pennsylvania judgment, which occurred after the judgment entered by the Chancery Division in Middlesex County, had deprived both Tara and Sinha of due process. It also asserted that in light of the fact that Kleiman was a party to the Middlesex County action and the principal of both Daribar and Greater North American, the Pennsylvania judgment was obtained fraudulently.

Sinha then retained his present counsel, who filed a motion in Essex County to stay the Essex County action pursuant to *N.J.S.A.* 2A:49A–29. By the time the motion was heard, the Pennsylvania common pleas court had denied the petition to reopen but Sinha had filed an appeal. The trial court in Essex County denied the motion for a stay on May 2, 2002, because Tara and Sinha had not filed a bond to secure the judgment. It did, however, adjourn the trial date until July 8 to permit Sinha to proceed with his Pennsylvania appeal.

The Pennsylvania appeal had not been resolved by July 8 but the trial court would not entertain any further applications to carry the trial date. After extended discussions and exchange of correspondence, the trial court in Essex County entered an order

for judgment on September 13, 2002, entering judgment against Tara and Sinha in the sum of $246,293.18, together with prejudgment interest of $43,503.36. The Pennsylvania appeal had still not been resolved by that date and the order provided that its enforcement was stayed pending final resolution of the appeal in Pennsylvania. In November 2002 the Essex County trial court denied a motion for reconsideration.

This appeal followed upon the denial of the reconsideration motion. Book has elected not to participate in this appeal. While this appeal was pending, in December 2002, the Superior Court of Pennsylvania rejected Sinha's appeal, leaving the Pennsylvania judgment in place. That court concluded that the reliance by Sinha and Tara upon the assurance by former counsel that no action was necessary in Pennsylvania in light of the Middlesex County judgment was misplaced and that such "misplaced reliance" was not a reasonable explanation for the delay in seeking to open the judgment.

The full faith and credit clause of the United States Constitution provides that "[f]ull Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." *U.S. Const.* art. IV, § 1. The exceptions to this obligation are limited but critical. The New Jersey Supreme Court has summarized the principle in the following manner. "Under New Jersey law, a judgment properly entered in another jurisdiction is entitled to full faith and credit provided the judgment does not violate the Due Process Clause." *In re Triffin,* 151 *N.J.* 510, 524, 701 *A.*2d 907 (1997).

This court has recently had occasion to consider an application to enforce in New Jersey a default judgment obtained in Texas.

In the context of an application to domesticate a foreign money judgment, a court of this State is obliged to recognize a foreign money judgment, unless the defendant demonstrates that the foreign jurisdiction lacked personal jurisdiction of defendant, the judgment was obtained by fraud or was entered contrary to due process.

[*Arnold, White & Durkee v. Gotcha Covered,* 314 *N.J.Super.* 190, 201, 714 *A.*2d 360 (App.Div.), *certif. denied,* 157 *N.J.* 543, 724 *A.*2d 803 (1998).]

Entry of judgment by confession has long been viewed with "judicial distaste." *Ledden v. Ehnes,* 22 *N.J.* 501, 510, 126 *A.2d* 633 (1956). Such judgments have been described as "the loosest way of binding a man's property that was devised in any civilized country." *Ibid.* (quoting *Diament v. Alderman,* 7 *N.J.L.* 197, 198 (Sup.Ct.1824)). Entry of judgment based upon a warrant to confess judgment does not, however, necessarily offend due process, as long as the due process requirements of reasonable notice and opportunity to be heard are knowingly and voluntarily waived. *United Pac. Ins. Co. v. Lamanna's Estate,* 181 *N.J.Super.* 149, 156, 436 *A.2d* 965 (Law Div.1981). In certain contexts, moreover, a post-judgment hearing may afford the requisite due process. *Id.* at 162, 436 A.2d 965.

After carefully scrutinizing the entire record presented to us on appeal, we have concluded that Pennsylvania's rejection of defendant Sinha's attempt to reopen the judgment obtained by confession is not conclusive upon our New Jersey courts because that post-judgment hearing did not address the question whether Pennsylvania had jurisdiction in the first instance over defendant Sinha. Further, we are unable to discern within that record any basis for Pennsylvania's attempt to exercise personal jurisdiction over Sinha.

As we have noted, a judgment entered in a state which did not have jurisdiction over the defendant is not entitled to full faith and credit in New Jersey. *Arnold, White & Durkee, supra,* 314 *N.J.Super.* at 201, 714 *A.2d* 360.

Our analysis is guided by the approach expressed by the Supreme Court in *James v. Francesco,* 61 *N.J.* 480, 295 *A.2d* 633 (1972). The plaintiff in that case obtained a judgment in North Carolina against defendant for injuries received in an automobile accident in that state. Defendant, a New Jersey resident, was neither the owner nor driver of the vehicle, having sold it several months prior to the accident. Plaintiff brought suit in New Jersey to enforce the North Carolina judgment and the trial court

refused to permit defendant to challenge that judgment for lack of jurisdiction.

Defendant's initial attempts on appeal were aborted, the Court referring to the fact that defendant had been "egregiously represented by his first attorney." *Id.* at 484, 295 *A.*2d 633. The Court then noted that "[i]n such circumstances of probable merit and serious default of representation by the first attorney a proper case for relaxation of the rules is presented in order to subserve the first objective of the rules of practice—the accomplishment of substantial justice on the merits." *Ibid.* As to the merits, the Supreme Court reversed, noting that the Full and Faith Credit Clause of the United States Constitution applies only where the judgment of the foreign state is "founded upon adequate jurisdiction of the parties. . . . A judgment which is void is subject to collateral attack. . . ." *Id.* at 485, 295 *A.*2d 633.

This court has also permitted a defendant to interpose a challenge in New Jersey to the jurisdiction of a foreign court in the context of an attempt to enforce that judgment in New Jersey. *Hupp v. Accessory Distribs., Inc.,* 193 *N.J.Super.* 701, 475 *A.*2d 679 (App.Div.1984) (declining to enforce a default judgment obtained in Hawaii against defendant Accessory, a company doing business in New Jersey after Hawaii had refused Accessory's attempt to set aside entry of default on the basis that Accessory's original failure to answer the Hawaii complaint promptly was inexcusable; the matter was remanded for a determination whether Hawaii had jurisdiction over defendant). We relied upon the Supreme Court's opinion in *James,* saying "[i]f a defendant does not appear when an action is brought against him and he thereby suffers a default judgment, he may in an action in another state question the validity of the judgment state by asserting that the court in the first case did not have jurisdiction over him." *Id.* at 708–09, 475 *A.*2d 679. We are satisfied that Sinha is entitled to rely upon that principle here in light of the fact that there is no showing that he has litigated the question of jurisdiction in Pennsylvania. *Id.* at 709, 475 *A.*2d 679.

The notes which were the foundation for the Pennsylvania judgment were obligations of the corporate defendant Tara, not individual obligations of Sinha, its principal. The notes were clearly executed in the capacity of president of Tara, not individually. It was only these notes, moreover, which contained the confession of judgment provision. By executing these notes, Tara agreed that in the event of default, judgment by confession could be entered against it in Pennsylvania.

Sinha acknowledged during the course of these proceedings that he did execute a personal guarantee. The parties dispute the extent of that guaranty, Sinha maintaining he only guaranteed one note, Kleiman asserting he guaranteed all the notes. That dispute, however, is not material for purposes of our present analysis, which focuses only on the question of jurisdiction.

In contrast to the notes, Sinha's guarantee did not authorize entry of judgment by confession in Pennsylvania against him individually. The guarantee is nothing more than Sinha's signature, under which is appended the word "Guarantor." We are satisfied that such a minimal undertaking cannot fairly be understood to constitute a submission by Sinha individually to jurisdiction in Pennsylvania.

Although we have found no reported authority in New Jersey on the question, other states have recognized that guaranteeing a note which contains a confession of judgment does not, without more, demonstrate an acceptance that judgment may be entered by confession against the guarantor.

A case arising out of Pennsylvania is illustrative. *Solebury Nat'l Bank of New Hope v. Cairns*, 252 *Pa.Super.* 45, 380 *A.2d* 1273 (1977). In that case, the court set aside a judgment by confession which had been entered against an individual guarantor of a corporate debt. The note executed by the corporation authorized entry of judgment by confession against it in the event of default. The president individually guaranteed the corporate debt, guaranteeing the note "according to its terms and hereby

[agreed] to all the provisions thereof." The court concluded that language "too indirect and general to demonstrate that appellant consented to the confession of judgment against himself individually." *Id.* at 1277. The present case lacks even that minimal indication that Sinha consented individually to confession of judgment against him.

Other states have reached a similar result. *Sidwell v. First Nat'l Bank of Wellington,* 76 *Colo.* 547, 233 *P.* 153 (1925); *Oakland Nat'l Bank v. Tomei,* 215 *Ill.App.*3d 638, 158 *Ill.Dec.* 969, 574 *N.E.*2d 1362 (1991) (holding that guarantee does not incorporate by reference the power to confess judgment contained within the underlying note which is the subject of the guarantee); *Sharpe v. Second Baptist Church* 274 *Ill.App.* 374 (1934). Cases are collected in J.F. Rydstrom, Annotation, *Enforceability of Warrant of Attorney to Confess Judgment against Assignee, Guarantor, or Other Party Obligating Himself for Performance of Primary Contract,* 5 *A.L.R.*3d 426 (1966).

Because Pennsylvania never had jurisdiction over Sinha, individually, the judgment entered against him in that State is void. New Jersey is thus not obligated to give that judgment full faith and credit. We have reviewed the papers Sinha submitted to Pennsylvania in his attempts to reopen that improperly obtained judgment. We are satisfied that nothing within these papers can be construed as a waiver of this jurisdictional argument. Further, the Court's opinion in *James v. Francesco, supra,* clearly indicates the question of jurisdiction of the foreign state may be raised initially in New Jersey.

A different result obtains, of course, as to the judgment entered against Tara. The corporation signed the note and agreed to entry of judgment by confession. Having consented to jurisdiction and confession of judgment in Pennsylvania, the judgment against it is enforceable in New Jersey.

Finally, we have considered whether the proper remedy is to remand the matter for a hearing on the question of jurisdiction as to Sinha individually, as opposed to determining the matter our-

selves. We are satisfied that in this present matter, there is no need for a remand. We reach this conclusion for several reasons. First, the record before us is extensive. We have the benefit of the record that was presented in Pennsylvania and the discovery undertaken in connection with both these matters. The question of jurisdiction, moreover, is fundamentally a question of law and does not require weighing issues of credibility.

Further, when Book purchased the Pennsylvania judgment, he was cognizant that the jurisdiction of the Pennsylvania court could be open to question. He provided for that eventually by including in his assignment the following clause:

In the event that Binod Sinha should vacate the Pennsylvania Judgment, or be able to dismiss the New Jersey suit based upon lack of jurisdiction or insufficiency of service of process in the underlying Pennsylvania action, GNAFC shall refund to Book any payments made hereunder and Book shall have no further obligation to GNAFC pursuant to this Agreement.

Thus, Book has a right to seek recovery for the funds he advanced and be made whole.

■ We recognize that within the notice of appeal, appellants denominated the order of November 8, 2002, denying the motion for reconsideration, as opposed to the earlier order for judgment, as the subject of this appeal. Their case information statement, however, makes clear that this is a matter in which the motion for reconsideration implicates the substantive issues underlying the order for judgment. *Fusco v. Bd. of Educ. of City of Newark*, 349 *N.J.Super.* 455, 460, 793 *A.*2d 856 (App.Div.), *certif. denied*, 174 *N.J.* 544, 810 *A.*2d 64 (2002).

In addition, it is only Book who is affected by this result and he has elected not to participate at all in these proceedings. He has presented no defense to the enforceability of this judgment in New Jersey. A remand would only require Sinha to incur even further expense and delay.

In sum, the order under appeal in A–438–02 is affirmed; in A–1464–02 it is affirmed in part and reversed in part.