**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0469-19

ERNEST BOCK, LLC,

     Plaintiff-Respondent,

v.

PAUL STEELMAN and
MARYANN STEELMAN,

     Defendants-Appellants/
     Third-Party Plaintiffs,

v.

ANTHONY J. CATANOSO,
CHRISTINE CATANOSO,
CHARLES T. CATANOSO, JR.,
NINA CATANOSO, WILLIAM G.
CATANOSO, TINA CATANOSO,
EDWARD J. OLWELL,
ROBERTA NEVIN,
CAPE ENTERTAINMENT
ASSOCIATES, LLC, THE
ROCKET, LLC, HI TECH
THRILLS, LLC, ATLANTIC PIER
AMUSEMENTS, INC., and STEEL
PIER ASSOCIATES, LLC,

     Third-Party Defendants-

Respondents.
_____

Argued September 20, 2021 – Decided October 13, 2021

Before Judges Sabatino, Mayer, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2294-15.

Thomas S. McNamara argued the cause for appellants (Indik, McNamara & Dallarda, PC, and Law Offices of Peter J. Scuderi, Esq., attorneys; Thomas S. McNamara and Peter J. Scuderi (Law Office of Peter J. Scuderi) of the Pennsylvania bar, admitted pro hac vice, on the briefs).

John F. Palladino argued the cause for respondent (Hankin Sandman Palladino Weintrob & Bell, attorneys; John F. Palladino, Evan M. Labov, and Sean P. Higgins, on the brief).

PER CURIAM

This appeal stems from an order granting summary judgment to a lender on commercial loan guaranties of approximately $12 million, and various other associated rulings of the trial court.

For the reasons that follow, we conclude summary judgment was prematurely granted before depositions of key witnesses and other pertinent discovery were completed. In addition, the trial court did not afford defendants a fair opportunity to litigate their contentions that the plaintiff lender breached

A-0469-19

the implied covenant of good faith and fair dealing. Specifically, defendants allege that the plaintiff lender engaged in transactions for its own benefit, which impeded the flow of revenues that might otherwise have been used to pay down the loan balances. Consistent with case law, including National Westminster Bank N.J. v. Lomker, we conclude the parties' guaranty agreements "do not expressly waive the defenses of bad faith . . . [.]" 277 N.J. Super. 491, 499 (App. Div. 1994). We likewise revive defendants' claims that the lender tortiously interfered with their reasonable expectations of economic advantage.

We consequently vacate the entry of summary judgment and remand for the completion of discovery, without prejudice to further substantive motion practice being pursued thereafter.

I.

The parties are surely familiar with the complicated factual and procedural background of this case, and there is no need for this opinion to discuss those details comprehensively. In addition, we are mindful that discovery is ongoing and that additional or competing facts may emerge. We therefore precede our analysis with the following abbreviated synopsis.

A-0469-19

Defendant Paul Steelman, a developer from Las Vegas, was a member of Steel Pier Associates, LLC ("SPA"), an entity that owned real estate known as the Steel Pier ("the Pier") on the Atlantic City boardwalk.

Steelman and his wife Maryann (the "Steelmans") guaranteed two loans on behalf of SPA. The loans were extended to SPA and a related entity, Cape Entertainment Associates, LLC ("Cape"), by plaintiff Ernest Bock, LLC ("Bock"), a company which did construction work on the Pier.[1] The Steelmans had non-controlling ownership interests in both SPA and Cape.

SPA defaulted on the loans. Bock did not pursue foreclosure on the property or sue SPA. Instead, Bock sought payment from the Steelmans as guarantors on the loans. After the Steelmans declined to pay the amounts due, Bock filed a complaint against them in October 2015 for breach of the guaranty agreements.

In May 2016, the Steelmans filed an amended answer and affirmative defenses to Bock's complaint. In that same pleading, the Steelmans asserted a counterclaim against Bock, contending Bock breached the implied covenant of good faith and fair dealing and also tortiously interfered with their prospective

---

[1] We shall refer to the LLC as "Bock", unless we specify that we are referring to Thomas Bock, the President of the LLC.

A-0469-19

economic advantage. The Steelmans simultaneously filed a third-party complaint against Anthony T. Catanoso, the managing principal of SPA, and other parties,[2] making parallel allegations of engaging in improper conduct with Bock. Anthony Catanoso, a number of his relatives (collectively "the Catanosos"), and several other third-party defendants are also co-guarantors of the loans.

The May 2016 version of the counterclaim and third-party complaint focused upon an amusement ride on the boardwalk known as the Wheel. Defendants charged that "[t]he Catanosos have denied Steelman the opportunity to share in the financial upside projected to be derived from the Wheel, opting instead to take the business opportunity from the Primary Owners of [the] Pier and enter into a secret agreement with Bock for development of the Wheel on adjacent land . . . [.]" That conduct, defendants alleged, "depriv[ed] the Primary Owners and Steelman the opportunity to gain from the potential financial upside projected to be realized from the Wheel."

---

[2] The other third-party defendants are Christine Catanoso, Charles T. Catanoso, Jr., Nina Catanoso, William G. Catanoso, Tina Catanoso, Edward J. Olwell, Roberta Nevin, Cape, The Rocket, L.L.C., High Tech Thrills, L.L.C., Atlantic Pier Amusements, Inc., and SPA. None of them are participating in this appeal.

A-0469-19

Over a year later, in August 2017, Bock moved for summary judgment against defendants, seeking a final judgment on the outstanding loans they had co-guaranteed. Defendants opposed the motion and also cross-moved for various forms of relief. In particular, defendants moved for leave to amend their counterclaim and third-party complaint by amplifying their allegations of bad faith, unfair dealing, and tortious interference. Those amplified allegations specified improper conduct in connection with: project funding in August 2011 and September 2011; loans from the Casino Redevelopment Authority ("CRDA") in 2012 and 2014; the Wheel; and alleged mismanagement of SPA that caused it to become undercapitalized. Again, defendants asserted that Bock, aided by the third-party defendants, breached the covenant of good faith and fair dealing. These allegations continued a theme already previewed in defendants' counterclaim over a year earlier, and surely were no surprise to Bock.

Defendants further alleged in their proposed amended pleading that Bock induced or conspired with the Catanosos "to enter into an undisclosed agreement regarding the purchase and/or development of the Wheel[,] [and] induc[ed] SPA to make loans in the amount of $3.2 million" to Domeinac, LLC, an entity controlled by Anthony Catanoso, "when those funds could have and should have been used to satisfy the Bock Funding" to SPA.

6

In addition, defendants alleged Bock directed other transactions that were "designed to impair the Companies' ability to borrow without Tom Bock's consent and/or involvement[.]" They alleged Bock diverted revenues that could have been used to repay the SPA loans, and instead were used to fund other ventures of his or entities under his control "for the benefit of DOMEINAC's development of the Wheel." According to defendants, these transactions and activities tortiously interfered with their prospective economic advantage.

In the third count of the proposed amended counterclaim, defendants requested that the court "equitably recharacterize" the SPA loans as a capital contribution to the enterprise. Defendants also sought leave to plead claims (1) for indemnification and contribution, and (2) alleging the fraudulent transfer of funds. Defendants further sought the appointment of a receiver or a statutory custodian for SPA and Cape.

In opposing summary judgment on the guaranties, defendants expressly argued under Rule 4:46 that such final relief in Bock's favor was inappropriate because discovery was incomplete. Defendants maintained in this regard that Bock had not turned over certain relevant financial records that could aid them in opposing summary judgment. They further urged they needed the depositions

A-0469-19

of Thomas Bock and the Catanosos before the summary judgment motion could be fairly adjudicated.

After hearing oral argument, the trial court rejected defendants' arguments and granted summary judgment in favor of Bock on the unpaid notes. The court issued two companion written opinions conveying its reasons on September 17, 2018.

The trial court was unpersuaded that the loans should be recharacterized as capital contributions. Although not explicitly saying so in its written opinions, the court appeared to adopt Bock's position that the terms of the guaranty agreements permitted Bock to pursue defendants as guarantors of the loans without first seeking payment from the borrowers or the other co-guarantors. The court also seemingly agreed with Bock that, under the language of the guaranties, defendants waived the right to object to the lender foregoing or impairing the collateral on the notes.

The court did not allow defendants leave to amend their counterclaims. In this regard, the court stated Bock "has sufficiently established that there is no genuine issue of material fact for the above stated reasons in [Bock's] Reply[.]" As the court wrote, the counterclaims for breach of the implied covenant of good faith and fair dealing and tortious interference must be dismissed "because the

A-0469-19

[c]ourt finds that the money was a loan rather than equitable funding." The court added that the breach of implied covenant claims were not tenable because the loan notes were from SPA and Cape to Bock, and consequently "there are no legal obligations between the individual members of the two entities to each other individually."

Pursuant to Rule 4:42-2 and Rule 4:59, the court certified its summary judgment order as final for purposes of appeal, even though other issues in the case (such as the third-party complaint) had yet to be adjudicated. The amount of the final judgment, inclusive of interest as of the date of its entry, was $11,831,365.32.[3]

Defendants moved for reconsideration, which the court denied in another set of written opinions on March 19, 2019. The court found it had already sufficiently addressed and dispensed with defendants' arguments, and there were no grounds for revisiting or altering its decisions.

Defendants now appeal. A central aspect of their arguments is that the trial court prematurely granted summary judgment before discovery was completed. In addition, they argue the trial court's reasoning was flawed,

---

[3] We presume post-judgment interest since that time has substantially increased the present amount due.

particularly with respect to the dismissal of their claims of breach of the implied covenant and tortious interference.

Bock, meanwhile, first argues at length in its brief that defendants' appeal is procedurally defective for a number of reasons. As to the merits, Bock maintains there are ample grounds to uphold the entry of summary judgment against defendants as co-guarantors of the loans.

Among other things, Bock alleges defendants waived through the guaranty agreements any right to complain that Bock elected not to sue the primary obligors and pursue relief from them instead. Bock emphasizes that the guaranty documents contain a waiver of the right to assert impairment of the collateral for the loan, i.e., the Pier. Moreover, Bock contends that since SPA received the promised benefits of the loan agreements in the form of the borrowed funds, there is no basis for relief under alternative theories of lender liability.

II.

Before we delve into the substance of the issues, we briefly address Bock's procedural arguments, none of which are persuasive.

In particular, Bock argues defendants' appeal was filed too late and should be dismissed as untimely. Alternatively, Bock asserts that defendants have improperly challenged interlocutory orders that were not sufficiently identified

A-0469-19

in their Notice of Appeal and appellate Case Information Statement ("CIS").[4]

We reject those contentions.

As we noted earlier, the trial court certified the summary judgment order

on the loans as final under the special jurisdictional provision in Rule 4:42-2.

That Rule provides:

> If an order would be subject to process to enforce a judgment pursuant to R. 4:59 if it were final and if the trial court certifies that there is no just reason for delay of such enforcement, the trial court may direct the entry of final judgment upon fewer than all the claims as to all parties, but only in the following circumstances: (1) upon a complete adjudication of a separate claim; or (2) upon complete adjudication of all the rights and liabilities asserted in the litigation as to any party; or (3) where a partial summary judgment or other order for payment of part of a claim is awarded.
>
> [R. 4:42-2.]

To be certified as final under Rule 4:42-2, an order must fall within one of the

Rule's sub-parts and must also be subject to process to enforce a judgment

pursuant to Rule 4:59. Janicky v. Point Bay Fuel, Inc., 396 N.J. Super. 545, 550

(App. Div. 2007) (citations omitted). Rule 4:59, in turn, requires a money

judgment that is enforceable through ordinary collection procedures. See

---

[4] Bock did not file a cross-appeal, but reiterates arguments made in its January 2020 motion to dismiss the appeal and strike the amended CIS. We denied that motion, and continue to maintain that disposition here.

Newstead Blrds., Inc. v. First Merch. Nat'l Bank, 146 N.J. Super. 295, 296 (App. Div. 1977) (holding that a judgment or order will not "constitute a lien or be otherwise susceptible to execution unless final and for a sum certain[]") (emphasis added).

Here, the court certified as final its grant of summary judgment on the unpaid loans. That ruling constituted the adjudication of a separate claim pursuant to Rule 4:42-2, i.e., defendants' breach of the guaranty agreements. In addition, the money judgment—for a sum of nearly $12 million—was subject to enforcement pursuant to Rule 4:59. This is true even though defendants filed a third-party complaint against their co-guarantors, because according to the guaranty agreements, each signatory was jointly and severally liable. Thus, any determination the court eventually makes regarding the third-party complaint would presumably not affect defendants' own liability pursuant to the guaranty agreements.

We are satisfied the court's grant of summary judgment was properly certified as final and was appealable pursuant to Rule 4:42-2. The orders on appeal include the court's grant of summary judgment, the determination making that order final, and the denial of the motions for reconsideration of those orders.

A-0469-19

Bock argues defendants are improperly going beyond that and appealing interlocutory orders, including: (1) the September 17, 2018 order granting summary judgment; (2) the September 17, 2018 order permitting Bock to amend its pleading to add a count for fraud, and denying defendants' request to amend their third-party complaint; (3) the March 19, 2019 order denying reconsideration of the grant of summary judgment and granting Bock's motion to enter final judgment; and (4) the March 19, 2019 order denying reconsideration of the court's denial of defendants' motion to amend their third-party complaint.

As we have already noted, the September 2018 order granting summary judgment and the March 2019 order denying reconsideration of the grant of summary judgment, making it final, are properly before us on appeal in compliance with Rule 4:42-2.

The trial court's decisions dismissing the counterclaim[5] and denying defendants' requests to amend it, as well as its denial of leave to amend the third-

---

[5] Part of the confusion here results from the fact that the same order that denied defendants' request to amend their third-party complaint does not mention the counterclaim. There is no written order that explicitly dismisses the counterclaim or denies defendants' request to amend it. However, those rulings as to the counterclaim are expressly stated in the court's September 17, 2018 written opinion, granting Bock's motion for summary judgment.

A-0469-19

party complaint are enmeshed with its decision to grant Bock summary judgment on the loan guaranties. As we will discuss, infra, if defendants prove that Bock or the third-party defendants improperly impeded the ability of the borrowers to pay the loan debt, that improper conduct might excuse or justify defendants' non-payment of the guaranties. The issues are so closely connected that the present appeal fairly and logically should encompass the rulings about the counterclaim and third-party complaint. And, as we noted above, we decline to rescind our previous order denying Bock's motion to strike appellants' amendment of the CIS form. Indeed, the original CIS form expressly mentions the counterclaim.

Bock further argues that defendants' appeal was untimely because it should have been filed within forty-five days after the entry of the court's final order of judgment on March 19, 2019. See R. 2:4-1(a). This timing argument has no merit. Defendants timely filed their motion for reconsideration on April 8, 2019, nineteen days after the entry of the March 19 order. That action began to toll the period for filing the appeal. See R. 2:4-3(b). The court denied reconsideration on September 10, 2019, and defendants filed their appeal twenty days later on October 1, 2019.

When the grounds for a motion judge's ruling on summary judgment and reconsideration are essentially the same, an appeal solely from the denial of reconsideration may be sufficient for appellate review of the merits of the case. Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 461 (App. Div. 2002). This is especially true when the CIS makes clear that the court's order on reconsideration implicates the substantive issues in the underlying ruling. Ibid.; accord Tara Enters., Inc. v. Daribar Mgmt. Corp., 369 N.J. Super. 45, 60 (App. Div. 2004). Also, "in the interests of justice," an order not specifically listed on the CIS may be considered on appeal. Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 211 n.6 (App. Div. 2014), aff'd as modified, 224 N.J. 584 (2016).

Taking into account the tolling period, defendants' filing of their appeal on October 1, 2019 occurred a total of thirty-nine "countable" days after the initial March 19 orders, and thus within the forty-five-day time frame required by the Rules. They later amended their CIS to clarify exactly which of the orders of March 19, 2019 were on appeal. It was clear from the original notice of appeal and CIS that defendants were appealing the rulings underlying the court's March 19, 2019 denial of reconsideration of the grant of summary judgment and the entry of final judgment. No manifest prejudice resulted to Bock from

A-0469-19

defendants' amending their CIS, because their notice of appeal was timely and stated that the March 2019 order denying reconsideration and entering final judgment was on appeal.[6]

In sum, we reject Bock's procedural arguments and therefore proceed to the merits of the issues.

III.

The main issue before us is whether the trial court improvidently granted summary judgment to Bock and enforced defendants' guaranties, without first allowing defendants to complete depositions and other discovery. Part and parcel of that determination is whether defendants' non-payment of the guaranties could be justified as a matter of law because of alleged wrongful conduct by Bock or the third-party defendants that impeded the ability of the primary borrowers to pay the loan amounts.

Bock relies heavily on the fact that the guaranty agreements contain language granting it full discretion on whether to foreclose on the collateral, which the guarantors waived any right to oppose. In this regard, the guaranty agreements stated, in pertinent part, as follows:

_____

[6] Foreshadowing a main argument in their appellate briefs, defendants' notice of appeal expressly stated that the court's September 2018 grant of summary judgment was premature because discovery was not completed.

A-0469-19

Guaranty Absolute and Unconditional. The liability of the Guarantor under this Guaranty is absolute and unconditional irrespective of:

1. any lack of validity or enforceability of any of the Loan Documents;

2. any change in the time, manner, place or amount of payment or in any other term of all or any of the Indebtedness, or any other amendment or waiver of or any consent to departure from any of the terms of the Indebtedness;

3. any exchange, release or non-perfection of any collateral or lien securing all or any part of the Indebtedness, which exchange, release or non-perfection the Guarantor expressly agrees will not be deemed an unjustifiable impairment of the collateral;

4. any release or amendment or waiver of or consent to departure from any other guaranty, for all or any part of the Indebtedness;

5. any settlement or compromise with any Borrower or any other person relating to the Indebtedness; or

6. any other circumstances which might otherwise constitute a defense available to, or a discharge of, any Borrower, any guarantor or other obligor in respect of the Indebtedness or the Guarantor in respect of this Guaranty.

In addition, the guaranty agreements included language that waived the guarantors' defense of impairment of collateral. The agreements further authorized Bock to release its interest in the collateral:

> Waiver. . . . . <u>This Guaranty will not be affected by any surrender, exchange, acceptance, compromise or release by the Lender of any other party, or any other guaranty or any security held by it for any of the Obligations, by any failure of the Lender to take any steps to perfect or maintain its lien or security interest in or to preserve its rights to any security or other collateral for any of the Obligations or any guaranty</u>, or by any irregularity, unenforceability or invalidity of any of the Obligations or any part thereof or any security or other guaranty thereof. The Guarantor's obligations hereunder shall not be affected, modified or impaired by any counterclaim, set-off, deduction or defense based upon any claim the Guarantor may have against the Borrower or the Lender, except payment or performance of the Obligations.

The agreement continued:

> The Guarantor hereby <u>waives</u> . . . . (f) <u>any requirement that the Lender protect, secure, perfect or insure any security interest or lien or any property subject thereto or exhaust any right or take any action against the Borrower, the Guarantor, any other person or any collateral</u>; . . .

> (emphasis added).

Finally, the guaranty agreements included an indemnity clause, whereby the guarantors agreed to indemnify the lender (Bock) from any claims and damages asserted against the lender, so long as those claims were not "solely attributable" to the lender's "gross negligence or willful misconduct."

Nevertheless, the guaranty agreements contained no express language waiving the guarantors' ability to argue that their payment obligations are excused or diminished by proof of a breach of the implied covenant of good faith and fair dealing. This is a critically important omission.

As this court held in <u>Lomker</u>, 277 N.J. at 496–97:

> <u>Every contract contains an implied covenant of good faith and fair dealing</u>. <u>Onderdonk v. Presbyterian Homes of N.J.</u>, 85 N.J. 171, 182 (1981); <u>Palisades Properties Inc. v. Brunetti</u>, 44 N.J. 117, 130 (1965); N.J.S.A. 12A:1–203. Good faith is defined by the Uniform Commercial Code as "honesty in fact in the conduct or transaction concerned." <u>N.J.S.A.</u> 12A:1–201(19). In the context of commercial loans, we have recently recognized that this good faith requirement does not impose upon a lender obligations that alter the terms of its deal or preclude it from exercising its bargained-for rights. <u>Glenfed Financial Corp., etc. v. Penick Corp., et al.</u>, 276 N.J. Super. 163, 175 (App. Div. 1994) (lender's bad faith or lack of "honesty in fact" which would constitute a viable debtor's defense does not arise from lender's refusal to exercise greater forbearance). <u>But a debtor may defend against enforcement of lender's rights where the lender has engaged in bad faith, misconduct or the like</u>. <u>See</u> <u>Ramapo Bank v. Bechtel</u>, 224 N.J. Super. 191, 198 (App.Div.1988) (possibility of a concealed pre-transaction agreement not to pursue a co-guarantor in the event of default sufficient to overcome lender's motion for summary judgment).
>
> . . . .

Related to this obligation is the requirement that a lender not "unjustifiably impair" any collateral. N.J.S.A. 12A:3–606. See Langeveld v. L.R.Z.H. Corporation, 74 N.J. 45, 50 (1977); Lenape State Bank v. Winslow Corp., [216 N.J. Super. 115, 124–25 (App. Div. 1987)]. Equitable in nature and characterized as "probably the most important provision in the Code to the surety [or guarantor]," the defense of impairment of collateral is available to a guarantor just as much as to the debtor. Langeveld, [] 74 N.J. at 51-52. No less can be said for the defenses of lender bad faith and misconduct.

[Id. at 496–97 (emphasis added).]

In Lomker, the lender sued the guarantor of a real estate loan because the debtor defaulted. 277 N.J. Super. at 493-95. The guarantor argued the lender engaged in bad faith with respect to the collateral. Ibid. The alleged bad faith consisted of the lender leaking information to a potential buyer that the bank would soon be foreclosing on the collateral property. Ibid. That leak resulted in the sale not going through, but the buyer ultimately purchased the collateral property from the lender for a price below market value. Ibid.

In Lomker, we reversed the trial court's grant of summary judgment on the guarantor's claim that the lender had violated the implied covenant of good faith and fair dealing. We found no waiver of that claim had occurred. We instructed there must be "unequivocal language" in the contract to effectuate a valid waiver of the defense of impairment of collateral, even when the language

20

of the guaranties gave "virtually unlimited power to [the lender] to dispose of and deal with the collateral." Id. at 497-98. In this regard, we cited Langeveld v. L.R.Z.H. Corp., 74 N.J. 45, 53-54 (1977), for the proposition that the "right [to the defense of impairment of collateral] does not originate in contract, and [] cannot lightly be destroyed by contract." Id. at 498.

Most importantly for purposes of the present case, we extended our holding in Lomker regarding the impairment-of-collateral defense to any defense of "bad faith and other misconduct," stating that "[i]n order to waive those lender liability defenses, a guaranty must do so expressly." Ibid. (emphasis added). We noted "this result logically flows from the maxim strictissimi juris (according to strict law) that applies to guaranties. Max v. Schlenger, 109 N.J.L. 298, 301 (E. & A. 1932)." We added that "a guarantor cannot be held liable beyond the strict terms of the guaranty." Ibid. (citations omitted).

Consistent with these principles, we held in Lomker that the "conspiring" conduct and "'inside' dealing" that culminated in the lender making "a better deal for the same property" amounted to "wrongful and intentional conduct not waived by the language in the guaranties." Id. at 499. (emphasis added).

21

Hence, <u>Lomker</u> is clear precedent that, absent express language, a guarantor does not waive the implied covenant of good faith and fair dealing, even in a case where a contract otherwise gives the lender broad powers over the collateral. It also signifies the provision of a loan in and of itself does not insulate a lender from a claim of engaging in bad faith conduct during the loan repayment period.

Here, the guaranty agreements we have quoted above did grant Bock extensive power over the collateral, and also expressly waived the defense of impairment of collateral. Nevertheless, the agreements did <u>not</u> contain language that expressly waived the implied covenant of good faith and fair dealing. Also, the guaranty agreements were not enforceable to the extent the lender engaged in gross negligence or willful misconduct.

Because the guaranties do not contain an express waiver of the implied covenant, and because there are material factual disputes as to whether Bock violated the covenant, the trial court should not have granted summary judgment on the guaranties. Nor should the trial court have rejected, out of hand,

22

defendants' associated counterclaims, and denied the motion to amplify them along with the related third-party complaint.[7]

Bock cites Glenfed Financial Corp., Commercial Finance Division v. Penick Corp. for the notion that a lender has not violated the implied covenant when it enforces its rights under a guaranty contract. 276 N.J. Super. 163, 178-79 (App. Div. 1994). Bock's argument overreads Glenfed, and elides our later holding in Lomker.

In Glenfed, the defendant corporation experienced severe financial distress and attempted to raise funds, but the lender withheld its consent when asked to forego protections contained in the guaranty contract. Id. at 169-72. Ultimately, the corporation diverted funds it was supposed to be holding to repay the loan; the lender discovered this and accelerated the due date of the loan. Ibid.

We held in Glenfed that the implied covenant of good faith and fair dealing "may not be invoked by a commercial debtor to preclude a creditor from exercising its bargained-for rights under a loan agreement." Id. at 175. There

---

[7] In this regard, we also permit defendants to pursue their allied claims of tortious interference with prospective economic advantage, which are based upon similar allegations of unfair dealing.

is no breach of the covenant "when a party simply stands on its rights to require performance of a contract according to its terms." Id. at 176 (citations omitted).

However, Glenfed may be readily distinguished because we found no evidence in that case of the lender's bad faith, lack of honesty, or personal malice, "or that [the lender] was pursuing its own economic interests unrelated to obtaining the repayment of the loan[.]" Id. at 178. But here, significantly, defendants have presented some evidence—which they anticipate developing through the completion of discovery—that Bock pursued its own selfish economic interests unrelated to repayment of the loan by acquiring the Wheel, releasing security interests in obtaining the collateral, and assuming obligations relating to significant funding from the CRDA for the benefit of Domeinac.

The record reflects, at least in its present incomplete state, material factual disputes regarding whether Bock violated the implied covenant. Viewing the present record, as we must, in a light most favorable to defendants, summary judgment should not have been granted. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

At the very least, defendants should have been afforded the opportunity to complete discovery that could shed light on these transactions and activities, including the depositions of Thomas Bock and other material witnesses. R.

24

4:46-5. We are acutely mindful that discovery has carried on for a long period of time. Even so, we discern no imperative to deprive the defense of the time to finish discovery that bears upon its asserted justifications for non-payment, particularly given the impact the COVID-19 pandemic has had on the civil trial calendar overall.

For these reasons we vacate the trial court's grant of summary judgment and remand the matter for continued discovery under the trial court's supervision. We also reverse the dismissal of defendants' counterclaims and the denial of leave to amend those counterclaims and their third-party complaint. We do so without prejudice to Bock's ability to renew a motion for summary judgment after discovery is finally completed. Our restoration of the case should not be viewed as any advisory opinion on whether defendants' contentions will ultimately be substantiated.

All other arguments raised by the parties lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Vacated and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION